**Affirmed and Majority and Concurring Opinions filed August 1, 2013.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-12-00528-CV

**ERNEST NAVY, Appellant,**

**V.**

**COLLEGE OF THE MAINLAND, Appellee.**

---

**On Appeal from the 10th District Court**
**Galveston County**
**Trial Court Cause No. 09-CV-0176**

---

## MAJORITY OPINION

Appellant Ernest Navy appeals the trial court's order granting summary judgment in favor of appellee College of the Mainland ("Mainland") on Navy's claims for employment discrimination and retaliation. We affirm.

I

Navy began working at Mainland as an adjunct professor in 2001. In 2004,

he applied for a full-time position as an associate professor of history in the Social and Behavior Science Department ("the department"). Pursuant to Mainland's team-based structure, the entire Social and Behavior Science team ("the team") contributed to employment decisions, including hiring and awarding tenure. Although several members of the team—particularly Steve Sewell and Rafael Naranjo—doubted Navy's qualifications, he was ultimately hired for the position.

In August of 2007, Navy applied for tenure. Because his tenure file was disorganized and included numerous spelling and grammatical errors as well as several instances of plagiarism, the team unanimously voted to deny Navy tenure. The team further decided by a 6–4 vote to deny Navy the opportunity to revise and resubmit the file. Navy appealed, but the ad hoc committee that was formed to review the appeal affirmed the team's decision. Navy then appealed the committee's decision to the board of trustees.[1] The board affirmed the denial but voted to allow Navy to revise and resubmit his tenure file. After another committee reviewed his revised file, they denied Navy tenure, explaining that "the resubmitted file presentation [fell] significantly short of minimal or basic expectations." Navy appealed again, and, in December of 2009, the board of trustees ultimately granted Navy tenure.

Meanwhile, in the fall of 2009, Mainland had switched from its team-based structure to a department structure. Pam Millsap was appointed as the department chair and became Navy's primary supervisor. Amy Locklear, the dean of general education, became Navy's secondary supervisor. James Templer was the vice president of academic affairs. Over the course of the spring semester, Millsap and Locklear progressively disciplined Navy several times for various conduct issues,

---

[1]While the appeal was pending, Navy filed his original petition against Mainland, alleging racial discrimination and retaliation. The suit was abated until Navy exhausted his administrative remedies at Mainland.

including repeatedly making false and unsubstantiated allegations against his colleagues; repeatedly violating Mainland's policies for proctoring exams and administering student evaluations after being counseled on the proper methods; assigning an excessive number of incomplete grades; inappropriately soliciting emails from students; and receiving excessive student complaints regarding his incorrect grade calculations, his failure to respond to students' emails, and the lack of organization of his online courses. Despite these disciplinary interventions, Navy consistently failed to correct his behavior, so Millsap, Locklear, and Templer recommended his termination. Pursuant to those recommendations and with the support of the board of trustees, then-president Michael Elam terminated Navy in July of 2010.

Navy sued Mainland under the Texas Commission on Human Rights Act (the "Act"), alleging disparate-treatment racial discrimination and retaliation.[2] Mainland moved for summary judgment. The trial court granted the motion, concluding that Navy failed to provide competent summary-judgment evidence to allow a reasonable trier of fact to conclude that he was entitled to relief. Navy then filed this appeal.

II

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Because Mainland's motion for summary judgment is a hybrid traditional and no-evidence motion, we apply the applicable

---

[2] Navy's pleadings, as well as his summary-judgment and appellate briefing, do not make clear the specific claims he is asserting against Mainland. In his live pleading at the time Mainland filed its motion for summary judgment, Navy purports to sue for "Disparate Treatment/Retaliation/Discrimination." In his appellate brief, however, Navy raises just one issue, that the trial court "erred in its grant of summary judgment," and then divides his argument into two sections. In the first section he appears to focus on a disparate-treatment theory and in the second on retaliation. For the purposes of this opinion, we have divided his single issue into two—one addressing disparate-treatment discrimination and the other retaliation.

standards of review for each. *See* Tex. R. Civ. P. 166a(c), (i); *Brockert v. Wyeth Pharms. Inc.*, 287 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In a traditional motion for summary judgment, the movant bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co. v. Grinnell, Inc.*, 951 S.W.2d 420, 425 (Tex. 1997). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact to defeat summary judgment. *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

A no-evidence motion for summary judgment must be granted if (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial, and (2) the respondent produces no summary-judgment evidence raising a genuine issue of material fact on those elements. *See* Tex. R. Civ. P. 166a(i); *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence

4

offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Lowe's Home Ctrs., Inc. v. GSW Mktg., Inc.*, 293 S.W.3d 283, 287–88 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion'" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009) (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

In reviewing either type of summary-judgment motion, we indulge every reasonable inference from the evidence in favor of the non-movant, resolve any doubts arising from the evidence in his favor, and take as true all evidence favorable to him. *Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

### III

In his first issue, Navy argues the trial court erred in granting summary judgment in favor of Mainland as to his disparate-treatment discrimination claim.

### A

The Act prohibits discrimination in employment based on "race, color, disability, religion, sex, national origin, or age." Tex. Lab. Code § 21.051. The relevant parts of the Act are patterned after Title VII of the federal Civil Rights Act. Thus, we look to federal precedent for interpretive guidance to meet the legislative mandate that the Act is intended to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473,

5

476 (Tex. 2001).

In resolving disparate-treatment cases, courts utilize a system of "burden shifting" in which the burden of production shifts from the plaintiff to the defendant and then back to the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). In employment-discrimination cases based on circumstantial evidence, the plaintiff's prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination. *Russo v. Smith Intern., Inc.*, 93 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). A prima facie case of racial discrimination requires proof that the plaintiff (1) is a member of a protected class, (2) was qualified for the employment position at issue, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated members outside of the protected class. *See Reeves*, 530 U.S. at 142; *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam).

For purposes of discrimination, the Act only addresses ultimate employment decisions; it does not address every decision made by employers that arguably might have some tangential effect upon employment decisions. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th. Cir. 1997), *abrogated on other grounds by Burlington Ne. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Generally, ultimate employment actions involve hiring, granting leave, discharging, promoting, and compensation, but not "events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which *might* jeopardize employment in the future." *See Mattern*, 104 F.3d at 707–08.

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to show a legitimate, non-discriminatory purpose for the adverse employment action. *Reeves*, 530 U.S. at 142. If the defendant presents a legitimate reason, the burden shifts back to the plaintiff to show either (1) the stated reason was a pretext for discrimination, or (2) the defendant's reason, while true, is only one reason, and discrimination was another, "motivating," factor.[3] *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). A plaintiff can avoid summary judgment if the evidence taken as a whole creates a fact issue as to whether the employer's stated reason was not what actually motivated the employer *and* creates a reasonable inference that discriminatory intent was a determinative factor in the adverse employment action. *Gonzalez*, 384 S.W.3d at 466. Although the burden of production shifts as described, the ultimate burden of persuasion remains on the plaintiff. *Id.*

B

It is undisputed that Navy, who is black, is a member of a protected class. For the purposes of Navy's disparate-treatment claim, the only relevant adverse employment event was his termination.[4] In its summary-judgment motion, Mainland contends that Navy cannot show that any similarly situated employees were treated more favorably. We agree.

Employees are similarly situated if their circumstances are comparable in all

---

[3] Because the federal courts are closely divided on the issue, we follow the plain meaning of section 21.001(1) of the Texas Labor Code, which provides that a plaintiff establishes an unlawful employment practice by showing that discrimination was a "motivating factor" for the practice. *See Quantum Chem. Corp.*, 47 S.W.3d at 474.

[4] The initial tenure denials were not ultimate employment actions for the purposes of this claim because Navy was ultimately granted tenure through Mainland's internal appeals process.

material respects, including similar standards, supervisors, and conduct. *Univ. of Tex. Med. Branch at Galveston v. Petteway*, 373 S.W.3d 785, 789 (Tex. App.—Houston [14th Dist.] 2012, no pet.). To prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of "comparable seriousness." *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917. Although "precise equivalence" in culpability between employees is not the ultimate question, the Fifth Circuit has held that to prove discrimination based on disparate discipline, the plaintiff must usually show that the misconduct for which he was disciplined or discharged was nearly identical to that engaged in by an employee outside the plaintiff's protected class who was not disciplined or discharged. *Id.* at 917–18 (citing *Smith v. Wal-Mart Stores, Inc.*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

The record indicates that Navy was terminated because he failed to positively respond to disciplinary intervention, specifically by continuously making unsupported allegations against colleagues, delaying answering students' emails, and exhibiting insubordinate behavior. Additionally, the quality of Navy's online courses was significantly substandard, he incorrectly calculated students' grades dating back to at least the summer of 2008, and he inappropriately assigned an excessive number of incomplete grades in the spring of 2010. Navy's unsatisfactory performance was also the subject of an excessive number of student complaints. Moreover, a high-school principal whose students took classes at Mainland requested that her students be assigned to any instructor other than Navy.

There is no evidence in the record of any other professor at Mainland with a similar history of misconduct and performance issues. Therefore, the trial court did not err by granting summary judgment as to Navy's disparate-treatment claim

because he offered no evidence of at least one essential element of the claim.[5]

## IV

In his second issue, Navy argues the trial court erred by granting summary judgment in favor of Mainland on his retaliation claim.

## A

To make a prima facie showing of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Protected activities consist of opposing a discriminatory practice; making or filing a charge; filing a complaint; or testifying, assisting, or participating in an investigation, proceeding or hearing. Tex. Lab. Code § 21.055; *Dias*, 214 S.W.3d at 676. If the plaintiff meets this requirement, the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action. *Pineda*, 360 F.3d at 487; *Dias*, 214 S.W.3d at 676. The plaintiff then assumes the burden to present proof that the stated reason was pretextual. *Gonzalez*, 384 S.W.3d at 466. "To carry this burden, the plaintiff must rebut each non-discriminatory or nonretaliatory reason articulated by the employer." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007), *quoted in Ellini v. Ameriprise Financial, Inc.*, 881 F. Supp. 2d 813, 820 (S.D. Tex. 2012) (Ellison, J.) (granting summary judgment on discrimination and retaliation claims asserted under the TCHRA).

Unlike the disparate-treatment provisions in the Act, the scope of the

___
[5] Having reached this conclusion, we need not address Mainland's argument that there was insufficient evidence to show that Navy was qualified for the position.

antiretaliation provision is not limited to conduct that constitutes "ultimate employment decisions"; rather, the provision "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Ne. & Santa Fe Ry. Co.*, 548 U.S. at 67 (rejecting the standard in *Mattern* to the extent it treated the antiretaliation provision as forbidding only the limited category of "ultimate employment decisions" prohibited by the antidiscrimination provision). Nevertheless, the antiretaliation provision protects an individual not from all retaliation, but from actions that a reasonable employee would have found materially adverse. *Id.* at 67–68. "Material" employer actions are those "that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). Normally, petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. *Id.* This objective standard is applied to a fact-specific inquiry "because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. This standard is tied to the challenged retaliatory act, not to the underlying conduct that forms the basis of the complaint. *Id.*

In addition, unlike claims for discrimination subject to section 21.125(a), which require just a "motivating factor" causation standard, retaliation claims under section 21.055 are subject to the traditional "but for" measure. *Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 497 & n.11 (Tex. App.—Amarillo 2009, pet. denied) (relying on *Pineda*, 360 F.3d at 488–89); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (discussing the causation requirement for a retaliation claim brought under Title VII). In other words, the plaintiff must prove that he would not have suffered an adverse employment action "'but for' engaging in the protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th

10

Cir. 2001); *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.").

B

In this case, it is undisputed that Navy engaged in several protected activities. In November of 2006, he filed a grievance against Naranjo, complaining that Naranjo had repeatedly made racially insensitive remarks and that the team had failed to resolve the problem. In January of 2008, he filed affirmative-action grievances accusing Templer and Bob Young, another supervisor, of discrimination.[6] Additionally, while the first appeal to the board of trustees was pending in 2008, Navy filed a complaint with the Texas Workforce Commission ("TWC"), alleging racial discrimination and retaliation. Navy also filed a civil suit against Mainland during that time, but it was abated until Mainland's administrative review of Navy's tenure file was complete.

1

The first alleged retaliatory action Navy identifies is a peer evaluation from 2007 in which his colleagues gave him low scores. The evaluation also included anonymous comments, most of which were negative and one of which specifically stated, "His behavior of falsely accusing a member and the whole team indirectly

---

[6] In the grievance, Navy alleged Templer and Young discriminated against him by disciplining him for sending an unprofessional email to Sewell but not disciplining Sewell for making unprofessional spoken comments to Navy. Mainland found insufficient evidence to support the grievance. Additionally, during his deposition, Navy was asked whether he believed Young, who is also black, discriminated against him based on race, and Navy replied, "I'm not going to say that. . . . I mean, you have to ask him."

as practicing racism and forcing confession during the past few months has been extremely divisive, insidious and defensive." Although this was clearly linked to the grievance Navy filed against Naranjo (to which the team had filed a unified response), we conclude that a negative peer evaluation would not deter a reasonable victim of discrimination from complaining about the discriminatory conduct and is thus not a materially adverse action. *See Burlington*, 548 U.S. at 68. Therefore, it is not actionable retaliation under the Act.

2

Navy also alleges that the initial tenure denials and his termination were retaliatory adverse employment actions. There is little if any evidence in the record to show a causal link between any of Navy's protected conduct and these events. But assuming without deciding that Navy established a prima facie case of retaliation and shifted the burden to Mainland, Mainland provided substantial evidence to show legitimate, nonretaliatory reasons for those actions.

With respect to the tenure denials, Mainland presented evidence that Navy's tenure file was disorganized and contained multiple instances of plagiarism, as well as numerous spelling and grammatical errors. In addition to these errors, a report by the first ad hoc review committee indicates that Navy was unreceptive to feedback, he used learning outcomes that were meant for elementary and high-school students and were not approved by the department, and his tenure file was missing student evaluations. Moreover, the committee questioned Navy's professional judgment and ethics because, for example, in his tenure file, Navy included what appeared to be a single email but was actually portions of two separate emails that he combined to change their meaning. Additionally, Mainland's attorney received an anonymous handwritten letter that purported to reveal a conspiracy by the initial tenure-review team to make it difficult for Navy

to receive tenure. Navy claimed that he believed Michele Betancourt, the only other black professor on the team, may have written the letter, but Betancourt denied the same, and a handwriting expert determined that the letter was in Navy's handwriting.

Similarly, Mainland showed numerous legitimate, nonretaliatory reasons for Navy's termination, which are supported throughout the record. As previously discussed, Mainland showed that Navy failed to positively respond to disciplinary intervention, specifically by making unsupported allegations against colleagues, belatedly answering students' emails, and behaving insubordinately. Mainland also showed that the quality of Navy's online courses was significantly substandard, he incorrectly calculated students' grades dating back to at least the summer of 2008, and he inappropriately assigned an excessive number of incomplete grades in the spring of 2010. Navy's unsatisfactory performance was the subject of an excessive number of student complaints, and further, a high-school principal whose students took classes at Mainland requested that her students be assigned to any instructor other than Navy.

In both his summary-judgment response and appellate brief, Navy attempts to rebut some of the nonretaliatory reasons Mainland gives for his tenure denials and termination: "When he was challenged with regards to the student evaluations, he went out and provided supporting documents reflecting good evaluations. When he was challenged by his colleagues' attacks, he obtained statements from other colleagues to address his skills and contributions to the institution." But providing good evaluations from other students does not demonstrate that the poor evaluations that caused Mainland's concerns were false. Similarly, the positive statements he obtained from other colleagues, who incidentally were not members of the Social and Behavior Science team, do not negate the negative reviews

voiced by his fellow team members.

As for Mainland's other nonretaliatory reasons, Navy leaves them unrebutted in both his summary-judgment and appellate briefing. *See McCoy*, 492 F.3d at 557 (holding that to show the employer's proffered reason is just a pretext, "the plaintiff must rebut each non-discriminatory or nonretaliatory reason articulated by the employer"). In a case such as this, to defeat summary judgment the plaintiff must raise a genuine issue of material fact on each of the articulated nonretaliatory justifications. *See id.* Because retaliation claims are subject to the "but for" causation standard, asserting that discrimination or retaliation was a "motivating factor" accompanying an unchallenged nonretaliatory reason is insufficient to defeat summary judgment. *See Ptomey*, 277 S.W.3d at 497 & n.11 (holding that plaintiff in a retaliation claim must satisfy the "but for" causation standard).

Navy has failed to raise a genuine issue of material fact on the question of whether the nonretaliatory reasons Mainland articulated for the adverse employment actions against Navy were pretextual. Accordingly, the trial court did not err by granting summary judgment in favor of Mainland on Navy's retaliation claim.

* * *

We overrule Navy's issues and affirm the trial court's judgment.

/s/     Jeffrey V. Brown
         Justice

Panel consists of Justices Brown, Christopher, and McCally (Christopher, J., concurring).

14