**Motion for Rehearing Granted; Affirmed; Memorandum Opinion filed January 16, 2014 Withdrawn; and Substitute Memorandum Opinion filed July 24, 2014.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-12-00980-CV

**APRIL DUPREE ADESHILE, Appellant**

**V.**

**METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, TEXAS, Appellee**

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-66501**

## S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We grant Adeshile's motion for rehearing, withdraw our memorandum opinion dated January 16, 2014, and issue the following substitute memorandum opinion. Appellant April Dupree Adeshile sued the Metropolitan Transit Authority of Harris County, Texas (METRO) for retaliation under the Texas Commission on

Human Rights Act (TCHRA).[1] On appeal, Adeshile contends that the trial court erred when it granted a directed verdict in favor of METRO. We conclude that Adeshile did not present sufficient probative evidence to raise a fact issue on her prima facie case of retaliation and affirm.[2]

## I.    FACTS AND PROCEDURAL BACKGROUND

While employed as a METRO bus driver in 2006, Adeshile filed a federal lawsuit against METRO, alleging sexual discrimination. She implicated several METRO employees, including Cordia Jackson, in that lawsuit. Ultimately, the federal lawsuit was dismissed.

In August 2009, Adeshile was still a METRO bus driver, and Jackson was the assistant superintendent of the METRO garage where Adeshile worked. On January 15, 2010, while Jackson was on medical leave, Adeshile was given a verbal counseling about METRO's Attendance Control Policy. The purpose of the counseling was to inform Adeshile that she had violated METRO's attendance policy in September 2009 by calling in sick too often within a ninety-day period. Believing that she had received the verbal counseling in error, Adeshile refused to sign the verbal counseling form. Adeshile then initiated this retaliation lawsuit.

Adeshile alleged in her petition that METRO retaliated against her by issuing unwarranted write-ups and disciplinary action and by denying her a promotion to Street Services Supervisor. She claimed that the disciplinary action and the denial of the promotion resulted from her 2006 discrimination lawsuit.

---

[1] *See* Tex. Lab. Code Ann. ch. 21 (West 2006 & Supp. 2013).

[2] In her motion for rehearing, Adeshile claims, without presenting any supporting evidence, that the August 8, 2012 portion of the reporter's record was deleted or destroyed. Contrary to her assertion, the third volume of the reporter's record in our possession is titled "Jury Trial – Motion for Directed Verdict" and is dated August 8, 2012. Absent evidence to the contrary, we conclude that we have a complete reporter's record.

Adeshile's case went to trial in 2012. After she had presented her case, METRO moved for a directed verdict, which the trial court granted. Adeshile timely appealed.

## II.   DIRECTED VERDICT STANDARDS

We apply a legal sufficiency standard when reviewing a directed verdict. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). A directed verdict is proper if no probative evidence raises a fact issue on the material questions in the lawsuit. *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 343 (Tex. App.—Houston [14th Dist.] 2003, no pet.). A directed verdict in favor of the defendant is proper (1) if the plaintiff does not present evidence raising a fact issue essential to her right of recovery or (2) if the plaintiff admits or the evidence conclusively establishes a defense to her cause of action. *Id.* at 343. When reviewing a directed verdict, we must consider all the evidence in a light most favorable to the nonmovant, crediting evidence a reasonable jury could credit and disregarding contrary evidence unless a reasonable jury could not. *Merriman*, 407 S.W.3d at 248. The trial court must instruct the verdict if there is no evidence of probative force on an ultimate fact element. *Cherqui*, 116 S.W.3d at 343.

## III.   DISCUSSION

To establish a prima facie case of retaliation, Adeshile had to prove that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal connection existed between the participation in the protected activity and the adverse employment action. *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 900 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see* Tex. Lab. Code Ann. § 21.055 (West 2006). The first element is not at issue in this case; Adeshile's 2006 discrimination lawsuit was a protected activity. *See* Tex. Labor Code Ann. § 21.055 (West 2006). METRO argues that Adeshile failed to raise a

fact issue on the second and third elements of retaliation. We agree.

## A. Adverse Employment Action

Adeshile presented no probative evidence of an adverse employment action. The TCHRA's anti-retaliation provision protects the individual from action that a reasonable employee would have found materially adverse. *Navy*, 407 S.W.3d at 901 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Materially adverse employer actions are those that are likely to deter victims of retaliation from complaining to the Equal Employment Opportunity Commission, the courts, and their employers. *Navy*, 407 S.W.3d at 901. Normally, petty slights, minor annoyances, and simple lack of good manners do not have the requisite deterrent effect. *Id.*

A court can consider the following factors in deciding whether an employer's actions were materially adverse:

(1)     the effect the act had on the employee's prestige;

(2)     the effect the act had on the employee's opportunity for advancement;

(3)     the effect the act had on the employee's pay;

(4)     the effect the act had on the employee's core job duties; and

(5)     the effect the act had on the employee's ability to obtain outside employment.

*See Montgomery Cnty. v. Park*, 246 S.W.3d 610, 615–16 (Tex. 2007) (applying Texas Whistleblower Act). The presence or absence of any of these factors is not dispositive because the effect of a challenged action must be considered as a whole in light of all the circumstances. *Id.*

Adeshile contends that her receipt of a Disciplinary Action Report (DAR), METRO's decision not to promote her to Street Services Supervisor, and her

receipt of verbal counseling about METRO's Attendance Control Policy all constitute material adverse employment actions that would support a retaliation claim. The issue here is whether any of the alleged acts constitute an adverse employment decision that would deter a reasonable employee from making or supporting a charge of discrimination. *Navy*, 407 S.W.3d at 901.

First, we need not determine whether a DAR is a material adverse employment action because the trial record contains no evidence that Adeshile received a DAR. According to Article 4 of the METRO Employee Performance Code and Work Rules, a DAR is "a notation in an employee's file that discipline has been taken as a result of a work rule violation." Adeshile testified that the minimum penalty for receiving a DAR is a suspension without pay and that the maximum penalty is termination. Adeshile testified that she was never suspended or terminated. At the time of trial, Adeshile was still employed by METRO as a bus driver. This suggests that Adeshile did not receive a DAR. Furthermore, Adeshile presented no evidence at trial that a DAR was ever placed in her file. Therefore, we cannot conclude that Adeshile received a DAR.

Second, we need not determine whether METRO's decision not to promote Adeshile to Street Services Supervisor was a material adverse employment action because the trial record contains no evidence that Adeshile was denied a promotion. Adeshile alleged in her petition that she was denied a promotion to Street Services Supervisor as a result of the 2006 discrimination lawsuit. However, she presented no evidence at trial to support her allegation. Generally, the testimony elicited by her counsel focused on whether Adeshile had received a DAR and whether the verbal counseling amounted to "discipline" under METRO's rules and regulations, not whether METRO denied her a promotion to Street Services Supervisor. Adeshile did submit into evidence a June 2008 cover letter,

5

resume, and application for the position of Street Services Supervisor, but she did not present any evidence connecting the documents to an actual 2008 job opening or to an employment decision made by METRO. The existence of the application documents, without more, is not sufficient to prove that METRO denied her a promotion.

Finally, we conclude that Adeshile did not present evidence raising a fact issue on whether the verbal counseling was a material adverse employment action. On January 15, 2010, METRO gave Adeshile a verbal counseling for violating its Attendance Control Policy. The verbal counseling in this case is evidenced by a form titled "Attendance Control Policy – Counseling."[3]

---

[3] The verbal counseling form states:

> The Attendance Control Policy has been explained in detail to the employee.
>
> Once a poor attendance record has been established, and you have received a counsel, there must be a ninety (90) day period between the last day of the first absence and the first day of the next illness to avoid more severe disciplinary action. Each incident of illness may be used for disciplinary action for twelve (12) months.
>
> Once counseled, which is the first step, the employee will be subject to the following disciplinary actions.
>
> 1. Counseling
>
> 2. Reprimand
>
> 3. Three (3) days suspension
>
> 4. Five (5) days suspension
>
> 5. Employee will be subject to discharge.
>
> After counseling or disciplinary action has been given, if the employee does not get on the sick list for ninety (90) days, counting from the last day of his/her previous incident, he/she will be counseled. However, the prior disciplinary action ie… [sic] reprimand or suspension, will not clear for twelve (l2) months.

6

Adeshile was not suspended or terminated as a result of the verbal counseling. Adeshile did not present any evidence, other than her own subjective belief, that a verbal counseling would adversely affect her prospects or prestige in the agency. *See Gold v. Exxon Corp.*, 960 S.W.2d 378, 385 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (plaintiff's subjective beliefs, without additional proof, are insufficient to survive a summary judgment). Adeshile did not present any evidence that she was reassigned or that her job duties were otherwise altered as a result of the verbal counseling. *See City of El Paso v. Parsons*, 353 S.W.3d 215, 228 (Tex. App.—El Paso 2011, no pet.) (applying Texas Whistleblower Act; reassignment was adverse employment action); *Gray v. City of Galveston*, No. 14-12-00183-CV, 2013 WL 2247386, at *7 (Tex. App.—Houston [14th Dist.] May 21, 2013, no pet.) (mem. op.) (same). Adeshile did not present any evidence that the verbal counseling actually affected her opportunities for advancement. Adeshile did not present any evidence that the verbal counseling affected her pay, her core job duties, or her ability to obtain outside employment.

The trial record further demonstrates that the verbal counseling did not deter Adeshile from making or supporting charges of discrimination. After receiving the verbal counseling, Adeshile sent multiple letters to her superintendent and to METRO's Associate Diversity EEO Compliance Officer complaining about incidents of sexual harassment, discrimination, and retaliation, all of which were unrelated to this case. Adeshile also filed a charge of discrimination with the EEOC on August 17, 2011, in which she colorfully described incidents of alleged sexual harassment dating back to 2002.

Viewing the entire record objectively and in the light most favorable to Adeshile, we conclude that Adeshile presented no probative evidence that the verbal counseling constituted a material adverse employment action. *Cf. Niu v.*

7

*Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731–32 (Tex. App.—Fort Worth 2006, no pet.) (holding that no adverse employment action occurred when employer reprimanded employee for combating his associates, making inappropriate comments to subordinates, and conducting himself unprofessionally).

### B. Causal Connection

Even if we were to assume that the verbal counseling was an adverse employment action, Adeshile did not present any evidence that a causal connection existed between her participation in the 2006 discrimination lawsuit and the verbal counseling. A TCHRA retaliation plaintiff must establish a "but for" causal nexus between the protected activity and the employer's prohibited conduct. *Crutcher v. Dall. Indep. Sch. Dist.*, 410 S.W.3d 487, 494 (Tex. App.—Dallas 2013, no pet.). The plaintiff must prove that without the protected activity, the employer's prohibited conduct would not have occurred when it did. *Id.* Circumstantial evidence showing the requisite causal link may include:

(1)    the employer's failure to follow its usual policy and procedures in carrying out the challenged employment actions;

(2)    discriminatory treatment in comparison to similarly situated employees;

(3)    knowledge of the discrimination charge or suit by those making the adverse employment decision;

(4)    evidence that the stated reason for the adverse employment decision was false; and

(5)    the temporal proximity between the employee's conduct and [the adverse employment action].

*Id.* (citing *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)).

The evidence in this case does not raise a fact issue on the causal connection between the alleged adverse employment action and the protected activity.

Adeshile presented no evidence that METRO failed to follow its usual policy and procedures in carrying out the verbal counseling. Adeshile presented no evidence that METRO treated similarly situated employees differently. Adeshile presented no evidence that James Wright, the person who gave Adeshile the verbal counseling, knew of Adeshile's 2006 discrimination lawsuit. Adeshile presented no evidence, other than her own subjective belief, that Wright gave Adeshile the counseling at Jackson's request. The four-year span between the 2006 discrimination lawsuit and the 2010 verbal counseling further suggests that the two events were not causally related. *Cf. Green*, 199 S.W.3d at 522–23 (holding that, without more, four months between employee's filing of a workers' compensation claim and employee's termination was not sufficient to establish causal link in support of employee's workers' compensation retaliation claim).

Adeshile did present some evidence, however, that the verbal counseling may have been given by mistake. The verbal counseling form stated that Adeshile was receiving counseling for an infraction that occurred on September 14, 2009. At METRO, an employee's sick days are recorded on Employee Data Calendars. Adeshile presented two versions of her 2009 Employee Data Calendar. The first version showed that she had been sick on August 19, 20, and 21. The first version also showed that she was sick for a period of time starting on September 14. The first version indicates that Adeshile was scheduled for verbal counseling because fewer than ninety days had passed between the August 21 sick day and the September 14 sick day.

The second version of the 2009 Employee Data Calendar showed that the August 19, 20, and 21 sick days had been whited out. The change had been initialed by a METRO superintendent. Adeshile testified that the changes were made in March 2010 after she complained to her union representative.

9

According to Adeshile, the discrepancy between the first and second versions of the 2009 Employee Data Calendar proves that someone at METRO falsified the records to establish a basis for eventually terminating her employment. Specifically, Adeshile believes that Jackson, Adeshile's supervisor and one of the METRO employees implicated in the 2006 discrimination lawsuit, falsified the calendar and initiated the verbal counseling in retaliation for the 2006 discrimination lawsuit.

The evidence, however, refutes Adeshile's beliefs. Jackson testified that she was not responsible for managing the Employee Data Calendars in 2009:

**Q.** Did you know that Ms. Adeshile was on the sick list for August 19th, 20, 21, 2009 at the time that – in August of 2009? Did you know she was on the sick list in August of 2009?

**A.** No, I did not.

. . .

**Q.** Who would have handled the issue of that attendance for August 19th, 20, and 21, 2009?

**A.** Robert Augustine [a METRO superintendent].

**Q.** As far as you know, sitting here today, did he handle that issue?

**A.** As far as I know.

**Q.** Did Mr. Augustine ever consult with you about the August 19 through 21st, 2009 attendance issue with Ms. Adeshile?

**A.** No, he did not.

**Q.** Were you involved in assessing, either notation in a card or calendar, or in assessing verbal counseling regarding Ms. Adeshile?

**A.** No.

**Q.** I want to move on to September 14, 2009, the next time Ms. Adeshile was on the sick list. Were you responsible for

10

handling that attendance issue?

**A.** No.

**Q.** Who would have handled it?

**A.** Robert Augustine.

**Q.** Now, a similar question. Did he consult with you about the September 14, 2009?

**A.** No.

**Q.** Let's look at August 19 through 21st, 2009. You see the S's; is that your handwriting?[4]

**A.** No, it is not.

**Q.** And kind of a line, **"VC."** Is that your handwriting?

**A.** No, it is not.

**Q.** Let's look at September. And again you see the circling and all the S's in September. Is that your handwriting?

**A.** No, it is not.

**Q.** Then you see the line on the way up. There's an "R" crossed out, and "VC." Is that your handwriting?

**A.** No, it is not.

Based on this uncontroverted testimony, we cannot say that Adeshile adequately connected Jackson to any of the alleged adverse employment actions. Nor can we say that the Employee Data Calendar discrepancy is probative evidence of a causal relationship when Adeshile has not linked the discrepancy or the verbal counseling to her 2006 discrimination lawsuit.

Even viewing the causation evidence in the light most favorable to Adeshile, *Merriman*, 407 S.W.3d at 248, and assuming that an adverse employment action occurred, Adeshile has not presented sufficient evidence to raise a fact issue on the

---

[4] METRO's attorney is referencing the first version of the 2009 Employee Data Calendar here. The "S's" are METRO's abbreviation for "sick day." "VC" is METRO's abbreviation for "verbal counseling."

11

causal connection between her participation in a protected activity and the alleged adverse employment action.

We conclude that Adeshile did not present sufficient probative evidence to establish a prima facie case of retaliation under the TCHRA. The trial court did not err when it granted METRO's motion for directed verdict. We overrule Adeshile's sole issue on appeal.

## CONCLUSION

The trial court's judgment is affirmed.


/s/        Marc W. Brown
                  Justice

Panel consists of Justices Boyce, Christopher, and Brown.