**Affirmed and Majority and Concurring and Dissenting Opinions filed December 8, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00938-CV

---

**JAMES HUDGENS, Appellant**

**V.**

**THE UNIVERSITY OF TEXAS MD ANDERSON CANCER CENTER, Appellee**

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2016-40798**

---

## CONCURRING AND DISSENTING OPINION

Appellant James Hudgens filed suit against Appellee University of Texas MD Anderson Cancer Center ("MD Anderson") in Harris County, alleging claims of age discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code § 21.051. In this appeal, Hudgens seeks reversal of the trial court's order granting the traditional and no-evidence motion for

summary judgment of MD Anderson and dismissing with prejudice each of Hudgens's claims (a disparate treatment claim and a wrongful termination claim). I concur with the majority's affirmance of the summary judgment on the disparate treatment claim, but I dissent from the majority's affirmance of the summary judgment on the wrongful termination claim because there are material issues of fact that preclude summary judgment on the wrongful termination claim.

## I.   ANALYSIS

### A.   APPLICABLE LEGAL STANDARDS

For claims of wrongful termination, a prima facie case of age discrimination requires proof that the plaintiff (1) is a member of a protected class; (2) was discharged; (3) was qualified for the position from which he or she was discharged; and (4) was either replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged because of his or her age. *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse employment action. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam).

"If the defendant presents a legitimate reason, the burden shifts back to the plaintiff to show either (1) the stated reason was a pretext for discrimination, or (2) the defendant's reason, while true, is only one reason, and discrimination was another, "motivating," factor." *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

**B.      STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

We review the granting of a summary judgment under a de novo standard of review. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). "[W]e apply the familiar standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675–76 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Texas courts disfavor summary judgments and use them merely to eliminate patently unmeritorious claims and untenable defenses. *Gonzales v. Hearst Corp.*, 930 S.W.2d 275, 279 (Tex. App.—Houston [14th Dist.] 1996, no writ) (citing *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989)).

**C.      HUDGENS'S WRONGFUL TERMINATION CLAIM**

**1.      PRIMA FACIE CASE**

For claims of wrongful termination, a prima facie case of age discrimination requires proof that the plaintiff (1) is a member of a protected class; (2) was discharged; (3) was qualified for the position from which he or she was discharged; and (4) was either replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged because of his or her age. *Russo*, 93 S.W.3d at 435.

MD Anderson does not dispute that Hudgens produced evidence of the first three elements but argues that there is no proof of the fourth element because Mayne, who replaced Hudgens, was only nine years and ten months younger that Hudgens. The prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). "In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker

3

*insignificantly* younger." *Id*. at 313 (emphasis added). *See also Kaplan v. City of Sugar Land*, 525 S.W.3d 297, 306 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (the replacement cannot be insignificantly younger than the plaintiff).

As support for its argument, MD Anderson cites *Grosjean v. First Energy Corp.*, 349 F.3d 332, 338 (6th Cir. 2003), in which the Sixth Circuit states, "The overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case."[1] In *Kaplan*, our court quoted this statement made in *Grosjean*. 525 S.W.3d at 306. However, in *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 284 (6th Cir. 2012), the Sixth Circuit interpreted its decision in *Grosjean* as establishing the following test for determining whether the age difference is significant:

> This court established a bright-line rule in *Grosjean* when it held that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id*. at 340. However, while an age difference of ten or more years is generally considered significant, *id*. at 336, replacement of the employee by a person who is six to ten years her junior must be considered on a case-by-case basis. *Cf. id*. at 340 (explaining that bright-line rule "does not encroach on our precedent holding that eight years can be a significant age difference"). Thus, *Grosjean* essentially created a zone of discretion in age-discrimination cases involving replacement by a person who is between six and ten years younger than the plaintiff. Here, the district court concluded that, although the six-and-a-half year age difference between Blizzard and Teeter "is perhaps not the best evidence to create an inference of age discrimination," it was nonetheless sufficient to create

---

[1] However, some decisions have held that age differences of nine years or less are sufficient to establish a prima facie case. *See Cicero v. Borg–Warner Auto*., 280 F.3d 579, 588 (6th Cir. 2002) (leaving the question of whether 43–year old was substantially younger than 51–year old to jury); *Tarshis v. Riese Org*., 211 F.3d 30, 38 (2d Cir. 2000) (replacement of 67–year old with 59–year old sufficient); *Fisher v. Vassar Coll*., 66 F.3d 379, 1995 WL 527804, at *29 (2d Cir.) (table) (48–year old and 44 year old professors were substantially younger than 53–year old), republished as amended, 70 F.3d 1420, 1450–51 (2d Cir. 1995) (same).

an issue of material fact at the summary judgment stage.

I agree with the *Blizzard* and *Grosjean* decisions that hold there should be a zone of discretion in age-discrimination cases involving replacement by a person who is between six and ten years younger than the plaintiff. The almost ten years of age difference between Mayne and Hudgens (approximately nine years and ten months) is sufficient to create a material fact issue as to whether Mayne was significantly younger than Hudgens. This conclusion is also consistent with *Rachid v. Jack In The Box, Inc.*, in which the Fifth Circuit held a four year difference in age is insignificant for the purpose of establishing a prima facie case based on a claim that plaintiff was replaced by a younger person and, without deciding the issue, commented that five years is a "close call." 376 F.3d 305, 313 (5th Cir. 2004). Therefore, the summary judgment evidence in this case is sufficient to raise a prima facie case for wrongful termination based on age discrimination.

## 2. EVIDENCE OF A NON-DISCRIMINATORY REASON FOR TERMINATING HUDGENS

Accordingly, the burden shifted to MD Anderson to produce evidence of a legitimate, non-discriminatory reason for terminating Hudgens's employment. *See Willrich*, 28 S.W.3d at 24. MD Anderson met this burden by producing evidence that Hudgens was terminated for unacceptable work performance—failing to locate and turn off the correct valve for the sprinkler system for Operating Room 8 ("OR 8), which caused significant damage to the OR and equipment, while Hudgens was under a 12-month Final Notice for failing to wear a hard hat in a construction area.

### 3.    EVIDENCE THAT AGE DISCRIMINATION WAS A MOTIVATING FACTOR

The burden then shifted to Hudgens to produce evidence that the non-discriminatory reason which MD Anderson presented for Hudgens's termination (1) was a pretext for discrimination, or (2) the reason, while true, is only one reason, and discrimination was another, motivating, factor. *Navy*, 407 S.W.3d at 899. As discussed below, Hudgens met this burden. The nonmoving plaintiff may respond to this burden-shifting aspect of the summary judgment motion by presenting evidence raising a fact issue on pretext or by challenging the employer's summary judgment evidence as failing to prove, as a matter of law, that the given reason for termination was a legitimate, nondiscriminatory reason for termination. *See Willrich*, 28 S.W.3d at 24.

"It is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000). "When all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based his decision on an impermissible consideration." *Id*. at 148. "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. However, an employer's proffered reason for the adverse action is not pretext for discrimination unless the plaintiff can show "*both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original); *see also Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003).

As discussed below, Hudgens produced evidence that MD Anderson's stated reason for terminating Hudgens was false. On May 20, 2015, MD Anderson sent Hudgens an "Intent to Terminate" letter, stating "you have failed to perform job

6

duties at an acceptable level." The Intent to Terminate described the incident leading to termination as follows:

On March 31, 2015 James "Jim" W. Hudgens submitted an outage request for the shutdown of the fire sprinkler system located on Alkek level 5 inside of operating room 8 (OR#8). This shutdown was necessary to allow a contractor to lower a sprinkler head inside of the operating room. On April 13, 2015 Jim assisted with the fire sprinkler system shutdown for this work. Two sprinkler valves on Alkek level 5 were closed, but these two valves did not shutdown the fire sprinkler system inside of the operating room. Expecting that the correct valves had been closed, the contractor removed the sprinkler head while the sprinkler system was still under pressure and this caused flooding in the room. The sprinkler water caused damage to the equipment inside of the operating room, the control room and other adjacent areas.

There is documentation which demonstrates that Jim Hudgens had prior knowledge of the correct valve location. Jim is an experienced safety specialist who routinely performs this type of task. He did not perform the necessary steps required to identify the correct valve of the system that serves the operating room. Jim's failure to perform the due diligence necessary to execute this type of task effectively resulted in damages to the operating room and its equipment.

On May 26, 2015, Woods sent Hudgens a letter stating that Hudgens's employment was terminated immediately because of his "unacceptable work performance." Thus, MD Anderson's stated reason for terminating Hudgens is that there is documentation which demonstrates that Jim Hudgens had prior knowledge of the correct valve location and that he did not perform the necessary steps required to identify the correct valve.

Hudgens, as site/facilities manager, prepared and submitted an outage request for the shutdown of a fire sprinkler system in order to extend a fire sprinkler head and install an escutcheon in OR 8 on the fifth floor of the Alkek building. The majority opinion correctly states, "Ruben Dimas, was responsible for identifying and closing the valve feeding the sprinklers in OR 8. Although OR 8 was on the fifth

7

floor, the shut off valve was located on sixth floor—a fact unknown to Hudgens or Dimas." Hudgens testified that it was Dimas's job to locate and turn off the correct valve and that was not something that Hudgens had delegated to Dimas. And Dimas's supervisor was Woods, not Hudgens. Hudgens was not even present when the flooding occurred, he was in a different building. Thus, Hudgens did not participate in either locating or turning off the valve; that was Dimas's job.

Wade Martin ("Martin"), an MD Anderson employee who worked under the supervision of Hudgens, also testified that Dimas, not Hudgens, was in charge of the outage [locating and turning off the valve] for the sprinkler system for OR 8 and that Martin worked with Dimas on that outage in a support function:

Q. Okay. Did you work on that -- on that assignment with Mr. Hudgens?

A. Well, Jim was there. I wouldn't say I worked with -- I mean, Ruben Dimas -- it was Ruben's outage.

Q. Okay.

A. He was in charge of the outage.

Q. Did you work on that outage as well?

A. Just as a support type function. It was in the OR. When you go into the OR, you have to be dressed out. I decided, "Hey, I'll be out here not dressed out in case you need me to run on something. I'll be here for you."

Q. Okay. I got that. So you're sort of on standby to jump in if needed?

A. Right.

There is also evidence that the failure to identify the correct turn-off valve for OR 8 was not negligence. Martin testified that Dimas turned off the two valves on the fifth floor and that Dimas, Hudgens, and Martin all believed that Dimas had turned off the right valves to OR 8 on the fifth floor. However, when the flooding occurred, they discovered that the sprinkler system for OR 8 was not tied to the rest of the fifth floor, but that OR 8 was fed from another floor. Martin testified that

8

placing the cutoff valve on a different floor "is completely out of the ordinary" and "for any building anywhere in the whole world, you don't do that." Martin testified that Dimas "did everything right."

In its brief, MD Anderson identifies the documentation that it alleges demonstrates that Hudgens had prior knowledge of the correct valve location, as an email sent by Brian Tague to Hudgens dated November 29, 2007, which states, "The pricing listed below will include the labor and material needed to install a pre action panel and devices for the system covering the OR Room on the 5th Floor (system is located on the 6th Floor at Stairwell CC"). This email, that was sent more than seven years before the 2015 flooding incident, did not concern a request to turn off a sprinkler system, but concerned pricing for a pre action panel. Hudgens testified that he did not understand from this email that the valve for OR 8 was on the sixth floor; the email did not specifically mention OR 8 and there are sixty operating rooms on the fifth floor. Hudgens testified that nobody ever told him that the system for OR 8 was moved from the fifth floor to the sixth floor.

In reviewing the summary judgment that Hudgens take nothing on his wrongful termination claim, we are required to "take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Dias*, 214 S.W.3d at 675–76. A factfinder could reasonably infer from the above-evidence that (1) it was Dimas's job to locate and turn off the correct valve, not Hudgens's, (2) Dimas, Martin, and Hudgens were not negligent for believing that the turn-off valve for OR-8 was on the fifth floor where OR-8 was located, not on the sixth floor where no one would expect the valve to be located, and (3) MD Anderson's statement—that there is documentation that demonstrates that Jim Hudgens had prior knowledge of the correct valve location—is false. A factfinder could also reasonably infer from this evidence that MD Anderson's stated

reason for terminating Hudgens—for not remembering an email sent over seven years before the flooding incident and not performing the necessary steps to identify the correct valve —was false.

But proving "pretext for discrimination" requires the plaintiff to show not only that the reason for termination was false, but also that discrimination was the real reason. *Hicks*, 509 U.S. at 515. A plaintiff may prove that discrimination was a real reason for the plaintiff's termination by producing evidence that "the defendant's reason, while true, is only one reason, and discrimination was another, "motivating," factor." *Navy*, 407 S.W.3d at 899.

Generally, a comment is probative of discrimination when it is (1) related to the plaintiff's protected class, (2) proximate in time to the adverse employment decision, (3) made by an individual with authority over the employment decision, and (4) related to the employment decision at issue. *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 577 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

There is evidence in the record from which a factfinder could reasonably infer that age discrimination was a motivating factor in Hudgens's termination, which include comments by a high-ranking supervisor with authority over Hudgens.

Hudgens reported to Fire Life & Safety Supervisor, Mike Woods. Woods reported to Fire Life & Safety Supervisor Manager, Reginald Phipps. Phipps reported to Environmental Health & Safety Director, Brian Galloy. Hudgens testified that he was told by Phipps that Galloy, was "targeting" him.

Hudgens also testified that Galloy asked him on five or six occasions, "Why are we paying you the big bucks?" A factfinder could reasonably infer from this testimony that Galloy was motivated to terminate Hudgens because MD Anderson

could then replace Hudgens with a younger employee that who MD Anderson would not be required to pay "the big bucks."[2]

In fact, MD Anderson did replace Hudgens with a much younger employee. Hudgens was replaced by Mayne, who was approximately nine years and ten months younger than Hudgens. In *Blizzard*, 698 F.3d at 284, the district court found that the six-and-a-half year age difference between the plaintiff and the person who replaced him was sufficient to create an issue of material fact as to age discrimination at the summary judgment stage. The Sixth Circuit held that the district court's decision in this regard was a reasonable exercise of its discretion under *Grosjean*. *Id*. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. Hudgens's prima facie case combined with the evidence that MD Anderson's stated reason for terminating Hudgens was false, and that Galloy was targeting Hudgens because he was being paid the "big bucks" creates a material issue of fact as to whether Hudgens was unlawfully discriminated against because of his age.

---

[2] The congressional proponents of the [Age Discrimination in Employment Act] and the Secretary of Labor's seminal report repeatedly emphasized that age discrimination pervaded the economy and constituted a serious problem for older employees earning higher salaries and benefits, both because employers can reap the greatest financial benefits from replacing these employees with younger, lower paid ones, and because these employees will have difficulty finding a comparable position if discharged. (citation omitted). In fact, older employees in highly paid positions may be in a particularly vulnerable position in that employers will have a greater incentive to seek to replace them with younger employees earning lower salaries.

*Nicholson v. CPC Int'l. Inc.*, 877 F.2d 221, 230 (3d Cir. 1989), *abrogated on other grounds* by *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

## II. CONCLUSION

For these reasons, I conclude that the trial court erred in granting summary judgment against Hudgens's wrongful termination claim and that the summary judgment as to the wrongful termination claim should be reversed.

/s/  Margaret "Meg" Poissant
    Justice

Panel consists of Justices Wise, Jewell, and Poissant. (Jewell, J., majority).