**Hugo FLORES, Appellant,**

v.

**The CITY OF LIBERTY, Texas, Liberty Police Department, Allen L. Barnes, William Griffin, Richard Lee Skarpa, Kenneth Taylor, and Gary L. Martin, Appellees.**

No. 09–09–00532–CV.

Court of Appeals of Texas, Beaumont.

Submitted May 6, 2010.

Decided Aug. 5, 2010.

Scott R. Breitenwischer, Randy A. Canche, Royston, Rayzor, Vickery & Williams, L.L.P., Lloyd E. Kelley, The Law Office of Lloyd Kelley, Houston, Julie Karee Cain, The Law Office of Julie Karee Cain, Liberty, for appellant.

Larry J. Simmons, Kellie B. Smith, B. Eliot New, Germer Gertz, L.L.P., Beaumont, for appellees.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

After the termination of his employment as a detective with the Liberty Police Department, Hugo Flores sued the Department, the City of Liberty, city manager Allen L. Barnes, police chief William Griffin, and fellow officers Richard Lee Skarpa, Kenneth Taylor, and Gary L. Martin. Flores alleged that "he was discriminated against on account of his national origin, Hispanic, and was retaliated against because of his opposition to unlawful employment practices in violation of the Texas Labor Code[.]" Flores also alleged that he "pursued his claim under the Whistle Blower Act and under the Sabine Pilot Common Law Rights." The trial court granted the defendants' combined traditional and no-evidence motion for summary judgment on all claims and entered a take nothing judgment. On appeal, Flores raises seven issues. We affirm the judgment of the trial court.

A judgment granting a combined traditional and no-evidence motion is reviewed first under the no-evidence standards of Rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004); *see also* TEX.R. CIV. P. 166a(i). If the non-movant fails to produce more than a scintilla of evidence to support the challenged element of his claim, there is no need to analyze the traditional motion for summary judgment. *Ridgway*, 135 S.W.3d at 600.

In response to a no-evidence motion for summary judgment, the non-movant must produce summary judgment evidence raising a genuine issue of material fact. *Id.* On appellate review, we view the evidence in the light most favorable to the non-movant. *Id.* at 601. "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Id.* at 600. A scintilla of evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transportation Ins. Co. v. Moriel,* 879 .S.W.2d 10, 25 (Tex.1994). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983).

Flores contends that the trial court erred in granting summary judgment on his claim of discrimination under the Texas Commission on Human Rights Act ("TCHRA"). *See* TEX. LAB.CODE ANN. § 21.051 (Vernon 2006). TCHRA provides for the state law execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. TEX. LAB.CODE ANN. § 21.001(1) (Vernon 2006); 42 U.S.C.A. § 2000e (West 2003). Accordingly, in a discrimination case that has not been fully tried on the merits, "we apply the burden-shifting analysis established by the United States Supreme Court" to the TCHRA discrimination claim. *Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003). The plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* The burden then shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. *Id.* at 805–07, 93 S.Ct. 1817.

To establish a prima facie discrimination claim Flores must show: (1) he is a member of a protected class; (2) who suffered an adverse employment action; and (3) non-protected class employees were not treated similarly. *See id.* at 792–93, 93 S.Ct. 1817; *Winters v. Chubb & Son, Inc.,* 132 S.W.3d 568, 574 (Tex.App.-Houston [14th Dist.] 2004, no pet.). The no-evidence motion for summary judgment challenged the third element of Flores's prima facie case. Flores argues that a comparison of the acts that led to his termination from his position as a detective with the Liberty Police Department to the acts of other employees of the Department demonstrate that employees of a non-protected class were not treated similarly.

Flores joined the Liberty Police Department in 2000 and was promoted to Detective in July 2003. The City of Liberty implemented a personnel policy manual on January 3, 2006. Flores received a copy on January 31, 2006. Grounds for disciplinary action, including termination, included: (1) fighting, using profane, abusive or threatening language; and (2) misconduct, defined as "[a]ny criminal offense or other conduct, including immoral conduct, which could have an adverse effect on the City or on the confidence of the public in the integrity of the City government or on the relationship of the employee and other employees."

Beginning in February 2006, Flores had a six-month long extramarital affair with an administrative employee of the police chief. In March 2006, Chip Fairchild complained to Chief Griffin about a confrontation Flores had with Fairchild over this

employee. Griffin talked to Flores the following week, and Flores recorded the conversation. Flores claimed that Fairchild had been flirting with the employee and that Flores told Fairchild that this employee was Flores's girlfriend and that Fairchild should "stay off of her." No adverse disciplinary action was taken.

On July 26, 2006, dispatcher Stacey R. Morrison filed a written complaint against Flores regarding sexual comments Flores made to Morrison and to Officer Sheree Peak in Morrison's presence. On July 28, 2006, Sheree Peak made an official written sexual harassment complaint against Flores based upon comments Flores had made to Peak over the previous several weeks. On September 5, 2006, Griffin and Flores had a conversation that Flores recorded. In this conversation, Flores told Griffin that Peak had harassed Flores by rubbing against him in front of her boyfriend. Flores also told Griffin that after Peak told Flores she did not want to "play" with Flores any more, she "pinched" Flores "on the nipples." On September 14, 2006, Griffin and Flores had another conversation that Flores recorded. In this conversation, Flores explained that he did not make any sexual advances toward Peak, like other officers did, but that he "plays" with her in a "different . . . more of a derogatory way[.]"[1] According to Flores, two or three weeks before she filed the complaint, Peak told Flores she "didn't want to play anymore." Flores expressed his opinion that Peak could not "hit and joke around" with other officers and then complain about him. Griffin stated that he would address the matter at the next patrol meeting and go over the policies with the officers as a group.

Flores received a substandard performance evaluation from William Griffin on August 16, 2006, and Flores was put on a 90–day review. Liberty City Manager Allen Barnes reviewed the evaluation. The evaluation included the following findings: (1) "Cannot be relied on for work of consistent quality. Tends to be careless."; (2) "Occasionally difficult to work with; will help when asked, although sometimes grudgingly."; and (3) "Requires extra supervision to finish tasks; accepts new ideas reluctantly; rarely anticipates problems." To the criticism that he was occasionally difficult to work with, Flores commented that he had only one verbal dispute with the task force officer, Elaine Taylor. According to Flores, the subject of the argument was Taylor's demand to see Flores's DPS files. The negative performance review was also based upon Flores's failure to build a burglary case against a person named Terry Duff. The district attorney's office rejected the case for insufficient evidence.

On September 20, 2006, Flores and Griffin discussed the evaluation, and Flores recorded the conversation. They discussed a credit union's complaint that Flores failed to adequately pursue a forgery case in January of that year. Flores stated that he received the checks on March 29, 2006, and that he had filed the case with the district attorney. Griffin commented that the case investigation should not have taken Flores two months to complete.

Flores received a disciplinary action from a supervisor, Sergeant Richard Skarpa, on September 27, 2006. The action involved an incident in which Flores, while off duty, drove an official vehicle to the apartment of the police chief's employee

---

1. Flores is evidently arguing that sexual comments and/or touching only qualifies as sexual harassment if the comment or touching is intended by the initiator of the conduct to lead to sexual activity. This is not the law.

with whom he had been having a sexual relationship (since ended). The written reprimand stated that Flores "drove his assigned vehicle to the Forest Grand Apartments to engage himself with (the employee) in a hostile manner[,] beating on the door[,] demanding the door open, causing others within the residence to flee." At the time of the action, Flores reserved comment. Flores received a suspension for the incident. Flores was told that if further unsatisfactory performance occurred, he would be terminated.

On October 6, 2006, a store clerk, J.C., filed a complaint against Flores that alleged Flores had intimidated J.C. Flores's wife, Stacy, told Flores that she thought J.C. was cute. Flores confronted J.C., asked what his name was, and where he was from. Flores claimed he asked those questions because he wanted his wife to see him talking to J.C. On October 10, 2006, J.C. submitted another formal complaint to the Department after Stacy Flores confronted J.C. about the first complaint. J.C. complained that Flores had found out that J.C. had filed a complaint.

On November 28, 2006, Flores received another disciplinary action for an infraction that occurred on November 20, 2006. Flores was reprimanded for taking off before his approved time. At the time of the reprimand, Flores reserved comment. Flores was warned that further unsatisfactory performance would result in termination.

On November 30, 2006, Flores was reevaluated and determined to have failed to meet minimum requirements. The negative findings from the previous evaluation appeared on this evaluation, and a finding that Flores took unauthorized leave was added. Flores was dismissed on December 11, 2006.

Flores contends that he established a prima facie case of discrimination by producing evidence of similarly situated employees engaging in much more inappropriate conduct while only Flores suffered ill consequences. *See McDonnell Douglas*, 411 U.S. at 792–93, 93 S.Ct. 1817; *Winters*, 132 S.W.3d at 574. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex.2005) (footnote omitted). "To prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817). Precise equivalence in culpability is not required, but a plaintiff must usually show that the misconduct for which he was discharged was nearly identical to the conduct engaged in by an employee whom the company retained. *Id.* at 917–18.

Flores contends that three officers engaged in inappropriate conduct: R.P. Pearson, Sheree Peak, and Kenneth Taylor.[2] Peak was a patrol officer. In July 2006, Flores reported to Griffin that Peak had falsified her time sheet. According to Flores, Peak told the Department she was in court for two days but stayed home one of the days and put on her time sheet that she was in court both days. Griffin told Flores that the matter would be dealt with on Peak's next evaluation. Flores then spoke to Skarpa, who agreed with Flores that he would consider Peak's actions to be theft.

---

**2.** Neither Pearson nor Taylor, both white males, is covered by Title VII. Peak, a female, does fall under the Act's protection.

On October 11, 2006, Flores had a conversation with Peak that Flores recorded. Peak told Flores that the court date had been on August 15 or August 16, and she had not yet been paid for the day she was accused of falsely reporting when on August 28 she discussed quitting her job with the Chief. Flores remarked that Peak was suspended about three weeks later.

During this conversation, Flores told Peak that the two of them would "have to play with big guns" to secure their jobs. Peak then told Flores that when she was training, Corporal Kenneth Taylor had sex with her on the hood of a patrol car. Flores reported the incident to Skarpa on October 31, 2006. In a statement dated October 31, 2006, Peak stated that the sexual encounter had occurred in February 2004. On November 30, 2006, Skarpa "counseled" with Taylor and advised Taylor that he would no longer be permitted to train with any female officers.

In the course of their conversation on October 11, 2006, Peak told Flores that on the previous day the Chief told her that the City was going to press theft charges and that the Chief gave her the option of resigning. Peak told Flores that during her meeting "they brought up Dustin," an inmate trusty with whom Peak had been seen in public. According to Peak, Dustin told Peak that Pearson had beaten a cat to death with a catch pole while Dustin and Pearson were working animal control.

Flores reported the allegations against Pearson to Skarpa. On November 2, 2006, Martin was assigned to investigate the allegations of animal cruelty. On November 2, 2006, Pearson wrote a report to Skarpa at Martin's command and as a condition of continued employment. Pearson admitted that he killed the cat but claimed the cat

had tried to bite him. Pearson claimed he struck the cat defensively, then struck the animal until it died because his first strike had "seriously hurt" the cat. Pearson claimed his actions were legal under a city ordinance that gave police the right to shoot or kill any rabid cat that is unconfined and poses a danger to the public, and a Department Policy that permitted officers to "relieve an animal so badly injured that it cannot possibly survive from injuries causing prolonged suffering."

Martin spoke with Dustin Spurlock, and noted that Spurlock arrived at the meeting in Peak's vehicle. Martin also noted that Peak had recently resigned due to allegations of impropriety. Spurlock stated that he did not think the cat was a threat. Martin concluded that he felt Pearson had been justified in his action and that he was concerned that Peak and Flores had known about the incident but did not come forward until "they found themselves in trouble." Martin concluded that there was not enough evidence of wrongdoing to take disciplinary action against Pearson.

■ Pearson and Taylor were each alleged to have engaged in a single act of misconduct, while Flores was terminated after a series of incidents and progressive discipline. Peak and Flores were both accused of multiple infractions, and they both received similar adverse employment actions. Thus, Flores failed to produce evidence that similarly situated employees of a non-protected class received disparate treatment, as he must to establish a prima facie case of discrimination. *Winters,* 132 S.W.3d at 574. We hold that the trial court did not err in granting summary judgment on Flores's employment discrimination claim.[3] We overrule issue one.

---

**3.** Because we hold that Flores did not produce any evidence to support one element of his prima facie case, we do not address the

parties' arguments and evidence relating to the other elements of the prima facie case, the articulated reason for the employment action,

■ In his second issue, Flores contends that the trial court failed to apply the applicable summary judgment standard to the appellees' no-evidence motion for summary judgment. Flores argues that the trial court should have allowed more time for discovery. Flores's response to the motion for summary judgment suggested that the no-evidence motion for summary judgment was not ripe because discovery was ongoing.

The case had been on file for almost thirteen months when the appellees moved for summary judgment, and had been on file for fifteen months when the trial court heard the appellees' motion. The trial court started the hearing on September 24, 2009, but continued the hearing by agreement of the parties. When the trial court reconvened the hearing on October 29, 2009, Flores did not re-urge his request for a continuance or ask for additional time to conduct more discovery. The discovery deadline was November 7, 2009, eight days after the summary judgment hearing. The appellees had responded to written discovery requests. The record does not indicate that any depositions had been scheduled but not taken at the time of the hearing. Finally, Flores suggested additional time was needed to complete discovery, but he did not file a motion for continuance with a supporting affidavit. *See Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 647 (Tex.1996); *Martinez v. City of San Antonio,* 40 S.W.3d 587, 591 (Tex.App.-San Antonio 2001, pet. denied); *Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 146 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Under these circumstances, the trial court did not abuse its discretion by considering the Rule 166a(i) motion for summary judgment.

*See* TEX.R. CIV. P. 166a(i) (A party may move for summary judgment without presenting evidence "[a]fter adequate time for discovery[.]"). We overrule issue two.

■ Flores contends he produced at least a scintilla of evidence of his whistleblower claim because he produced evidence that he reported criminal activity by Officers Peak and Pearson to his superiors. *See* TEX. GOV'T CODE ANN. § 554.001–.010 (Vernon 2004). The elements of a whistleblower claim are: (1) a public employee; (2) of a state agency or local government; (3) reported in good faith a violation of law; (4) to the appropriate law enforcement agency; and (5) the report was the cause of the decision to terminate the employee's employment. *Guillaume v. City of Greenville,* 247 S.W.3d 457, 461 (Tex.App.-Dallas 2008, no pet.); TEX. GOV'T CODE ANN. § 554.002. Appellees challenged the third and fifth elements in their Rule 166a(i) motion. *See* TEX.R. CIV. P. 166a(i). Appellees also moved for summary judgment on the grounds that Flores's reports were objectively unreasonable in light of his training and experience and that the reports were not the cause of Flores's termination. *See* TEX.R. CIV. P. 166a(c).

■ On or about November 2, 2006, Flores reported that Pearson committed animal cruelty by killing a cat. Flores's employment was terminated on December 11, 2006. Therefore, there is a rebuttable presumption that the report regarding Pearson was the cause of the termination of Flores's employment. *See* TEX. GOV'T CODE ANN. § 554.004(a) (A rebuttable presumption arises when the adverse personnel action occurs "not later than the 90th day after the date on which the employee reports a violation of law[.]"). "Once suffi-

and pretext raised in issues one through four. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–07, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917–18 (Tex.2005).

cient evidence is produced to support a finding of the non-existence of the causal connection between the termination or suspension and the reported violation of law, the case proceeds as if no presumption had ever existed." *City of Houston v. Levingston,* 221 S.W.3d 204, 226 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Here, Flores was clearly terminated within the ninety day window; however, there is no evidence that Flores reported a violation of law by a Liberty City official. Even if Flores had a subjective belief that the killing of the cat by Officer Pearson constituted a violation of the law, that belief was not reasonable for an officer with the training, experience, and responsibilities of Flores.[4] Therefore, the City proved as a matter of law that Flores did not have a good faith belief that he was reporting a violation of law, and the protections of the Whistleblower Act did not come into play. *See Donlevy v. City of the Colony,* 8 S.W.3d 754, 757 (Tex.App.-Fort Worth 1999, no pet.).

Flores argues on appeal that he raised a fact issue regarding the causal connection between his report of Peak in July 2006 and the termination of his employment, because he reported Peak's misconduct and "nothing was done about any of it." The record shows, however, that the Department did investigate Peak and that she chose to resign in the face of the accusation that she had falsified time records and had engaged in other inappropriate conduct.

Flores argues on appeal that regarding his report of a violation of law by Pearson, Flores was told to "mind his own business." Flores appears to imply that his superiors did not intend to investigate the

matter and thereby revealed a negative attitude towards Flores's report of Pearson's alleged unlawful activity. The summary judgment record shows that Flores's report did result in an investigation. In a May 9, 2007, conversation recorded by Flores, Texas Ranger Frank Huff told Flores that Huff had sent a Ranger named Jeff Cook to conduct a criminal investigation of the allegations. In addition, Martin conducted an internal investigation of the allegations. Martin was suspicious of the source of the information because it came from a trusty who had been directly implicated in Peak's misconduct. Nonetheless, Martin did require Pearson to make a written report on the matter as a condition of continued employment. Thus, the evidence relied upon by Flores on appeal does not raise an inference that Flores was told not to interfere because no investigation was going to be conducted. Therefore, the evidence that Flores relies on in his appeal to establish that he presented more than a scintilla of evidence to support his whistleblower claim does not support his causation argument. Because Flores has not shown that the trial court erred in granting summary judgment on Flores's whistleblower claim, we overrule issue five.

■ Flores contends the trial court erred in granting summary judgment on Flores's claim that his employment was terminated because he refused to perform an illegal act. *See Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex.1985). The appellees moved for summary judgment on the grounds that there is no evidence that Flores was asked to do anything illegal. On appeal, Flores mentions acts by other Department employees but

---

**4.** It is a criminal offense under Chapter 42 of the Texas Penal Code to torture or kill in a cruel manner a nonlivestock animal; however, nothing in the record indicates that Flores witnessed an offense or knew the details of the reported incident, and the details determined by the investigation established that no crime had occurred. *See* Tex. Pen.Code Ann. § 42.092(b)(1) (Vernon Supp.2009).

he does not claim that he was ordered to perform an illegal act and he provides no argument or reference to the record where he produced evidence that he was ordered to perform an illegal act. Having alleged other reasons for the termination of his employment, we agree with the trial court that there is no evidence to support a *Sabine Pilot* claim. We overrule issue six.

We also note that the appellees moved for summary judgment on Flores's claims against the individual defendants on the ground that there was no evidence to support individual liability. Flores does not address this portion of the summary judgment in his brief on appeal. Accordingly, the issue of individual liability is not adequately briefed. *See* TEX.R.APP. P. 38.1(i).

Flores contends the trial court erred in failing to sustain his objections to the appellees' summary judgment evidence. First, he contends the trial court erred in considering evidence relating to unpled affirmative defenses. We note, however, that the motion for summary judgment was based upon the absence of any evidence to support at least one element of each of Flores's claims, not upon an affirmative defense.

Flores also argues that the appellees' summary judgment evidence was not supported by verification. *See* TEX.R. CIV. P. 166a(f) ("Sworn or certified copies of all papers ... shall be attached thereto or served therewith."). The exhibits were verified in a supplemental filing.

■ Flores argues that he objected to Exhibits B, C, D, E, F, G, H, I, J, L, N, O, P, Q, R, S, T, U, V, W, and X on the grounds that they contained hearsay. Flores's trial objection was that these exhibits contained "hearsay within hearsay." "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule pro-

vided in these rules." TEX.R. EVID. 805. Both at trial and on appeal, Flores made a blanket objection without identifying each part of each statement that contained hearsay and hearsay within hearsay. As such, his objection was not sufficiently specific to preserve error. *See* TEX.R. EVID. 103(a)(1). On appeal, Flores fails to address each document, identify which parts of the document contain hearsay and hearsay within hearsay, and explain why the documents were not admissible as statement by a party opponent. *See* TEX.R. EVID. 801(e)(2). We overrule issue seven and affirm the judgment.

AFFIRMED.