**Affirmed and Memorandum Opinion filed December 30, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00938-CV

---

## CAROLYN WARRICK, Appellant

### V.

## MOTIVA ENTERPRISES, L.L.C, Appellee

---

**On Appeal from the 58th District Court
Jefferson County, Texas
Trial Court Cause No. A-192,663**

---

## M E M O R A N D U M   O P I N I O N

Appellant Carolyn Warrick appeals a summary judgment in favor of appellee Motiva Enterprises, L.L.C.[1]  Warrick brought suit against Motiva, alleging that Motiva had treated her dissimilarly from a similarly situated co-worker based either on her race or on its perception that she had a disability. Warrick also alleged that Motiva retaliated against her when she complained about

---

[1] Motiva is a joint venture between Shell Oil Company and Saudi Refining, Inc.

the dissimilar treatment.

Motiva filed a hybrid traditional and no-evidence summary judgment motion, including contentions that Warrick had no evidence to support, and that Motiva had conclusively disproved, (1) the existence of a similarly situated co-worker; (2) that Warrick suffered an adverse employment action; (3) that Motiva regarded Warrick as having a disability; and (4) that Warrick had engaged in conduct protected from retaliation. Because we hold that Warrick produced no evidence either that she suffered a sufficiently adverse employment action amounting to discriminatory treatment, or that Motiva retaliated against a protected activity, we do not reach the remainder of Motiva's summary judgment grounds. We affirm the judgment of the trial court.

## BACKGROUND

Warrick has been an employee at a refinery, now owned by Motiva, for over forty years. Currently, Motiva employs Warrick as a timekeeper. Warrick is the highest paid timekeeper at the refinery.

In 2011, Motiva expected its timekeepers to arrive between 5:30 a.m. and 7:00 a.m. At the time, Warrick was working a "9/80 Schedule," which required her to work nine hours per day Monday through Thursday, and eight hours every other Friday. Warrick's normal shift was from approximately 6:00 a.m. until 3:00 pm.

In April of 2011, during a meeting with her physician, Warrick "report[ed] being able to work 6–7 hours per day due to eye discomfort." Her condition was diagnosed as a left cranial nerve palsy. Warrick's physician recommended that she not drive at night, which she reported to Motiva. Warrick requested to report to work at 7:00 a.m., after the sun rose. Motiva agreed to move Warrick's start time

2

to 7:00 a.m., but required her to continue working nine hours per day Monday through Thursday.[2] Warrick's physician lifted the restriction on driving at night in August 2011.

On October 25, 2011, Warrick filed a complaint with the Equal Employment Opportunity Commission. Warrick's complaint alleged that Motiva employs three black female payroll clerks, including herself, and one white male payroll clerk, and that the "white male is given preferential treatment and allowed to come and go as he pleases . . . . We are forced to either make up our time or take vacations time off. He is allowed to take long lunch breaks without taking vacation time off."

Warrick further alleged that she had been "bullied" for 15 years, including the most recent incident in which she was sent an e-mail including information about a "book for 'Dummies'" and later found a "dummy.txt" file on her computer. Warrick alleged that she had reported the matter to HR and was told the e-mail was intended for someone else. Warrick also alleged that she had developed a serious medical condition and was unable to work, but felt that she was forced to return to work and that she was not reasonably accommodated upon her return. Warrick alleged that her supervisor informed her that she could not report to work until the sun came up, and denied her request to be paid for her time that she could not report to work.

In addition, Warrick alleged that she had "tried to resolve the racial harassment and workplace bullying through internal complaints" and that she had sent e-mail complaints to certain executives. Warrick alleged that she "believe[s she] has been discriminated against based on [her] race (Black), not reasonably

---

[2] Including her half-hour unpaid lunch break, this schedule would require Warrick to work from 7:00 a.m. until 4:30 p.m.

accommodated, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended."

Motiva responded to the charge in December 2011. In response to Warrick's allegations regarding her eye condition, Motiva claimed that in such circumstances, it does not pay nonexempt employees for hours not worked, but that it fully accommodated Warrick's medical restriction, allowing her to begin and end her shift during daylight hours. Motiva also claimed that it had investigated Warrick's claims regarding the white male employee and found data to support Warrick's claims that he had taken longer lunch breaks and left work earlier than his schedule permitted. Motiva denied preferential treatment for the male employee, however, as their supervisor had not authorized either the lunches nor early departures. The employee was disciplined as a result of the investigation.[3]

On January 16, 2012, Warrick sent an e-mail to several high-ranking company executives, including a Vice President of Shell Oil Company and the Chairman of the Board of Shell. The majority of Warrick's e-mail described her belief that Lee Poulter, a human resources manager at Motiva, was serially bullying her, which she defined as "when one employee targets another employee and repeatedly harasses them." Warrick believed that Poulter had an investigator break into her home. Warrick accused Poulter of having stolen "a report from an Investigator Company" and having placed a snake in her bed under the covers. Warrick also suggested that Poulter had arranged for her new pocket knife to fall out of the box it was packaged in, and that he had put twelve holes in one of her

---

[3] Motiva reprimanded the other employee and required him to pay back the time he missed in vacation hours.

4

tires.

In the last two paragraphs of her e-mail, Warrick alleged that there was another employee in her office "who has stolen time and overtime." Warrick claimed that she "wrote the EEOC about how the employee works approximately 7 hours a day and get[s] paid for 9 hours." Warrick alleged that the male employee had stopped stealing time after a meeting with his supervisor and the human resources manager in December 2011, but that the employee's behavior deserved action. Warrick also claimed she did not want anything to happen to the employee, but that she had exercised her "rights as an American citizen."

On January 24, Warrick was told that the company was concerned about her fitness for duty because her e-mail "contained some very serious and very unusual allegations about the company generally and . . . Poulter specifically." Motiva informed Warrick that it was requiring her to meet with a doctor, who would conduct an initial examination of her fitness for duty and may require her to meet with a specialist to make a final assessment of her fitness for duty. Motiva informed Warrick that she would be placed on paid disability leave until the company had a final assessment of her fitness for duty, but that she would be placed on unpaid leave if she refused to see either the doctor or any specialist to whom he may refer her. Motiva also told Warrick that failing to meet with either the doctor or a recommended specialist "may lead to discipline, up to and including discharge."

Warrick met with the doctor and was referred to a specialist. Specific referral questions included (1) whether Warrick presented a physical risk to herself or others at the workplace and if so, the nature of the potential harm; (2) whether there was anything the employer could do that might reduce such a threat; (3) whether a psychiatric problem existed that would likely prevent Warrick from

5

safely and competently performing necessary job tasks; and (4) whether the specialist had any suggestions to help the Motiva management team work effectively with Warrick.

Warrick filed a grievance with her union on February 7. Warrick asserted in her grievance letter that she was disciplined without just cause because she was required to meet with the doctor as a result of the e-mail she wrote on January 16. Warrick claimed that no one from the company had previously warned her that writing letters was misconduct and could lead to her being disciplined. Warrick stated that she would not have written the letter if she had known she would be subject to disciplinary action. Warrick also asserted that the comparison between Motiva's actions regarding her and another employee who was called into the human resource manager's officer for discipline illustrated her disparate treatment, because his violation was more serious but she received the more serious response from Motiva.

Warrick met with the specialist on February 17, and he submitted a report to Motiva on February 26. The specialist determined that Warrick presented a risk of physical violence relative to the general population, but that the risk was negligible at the time of the evaluation. The specialist did not recommend time off for Warrick, but did provide suggestions for future relations between Warrick and Motiva. The specialist indicated that "[s]etting limits on what is appropriate is very important," including "clear instructions on the use of emails. If [Warrick] has specific complaints, [Warrick] should know who to put her complaints to in writing, rather than sending emails to a variety of individuals." The specialist recommended that Motiva "should avoid arguing with [Warrick] about her concerns and continue to direct [Warrick] to the appropriate channels available to follow through with her complaints if she believes management is not doing their

part." The specialist cautioned that further action from Motiva may be appropriate if Warrick "demonstrate[d] an inability to stop sending inappropriate emails."

On March 20, 2012, Motiva provided Warrick with a letter containing conditions for her return to duty. Motiva informed Warrick that if she failed to follow the guidelines set out in the letter, she would be subject to disciplinary action that could include termination of her employment. The letter claimed that Warrick had "been making essentially the same harassment claims since 1999" and that "[t]hese claims must stop now." The letter further provided that Warrick was prohibited "from making any similar claims to any Motiva/Shell representative" and that she would "not be allowed to send emails, letters or initiate telephone conversations to anyone in Motiva/Shell with regard to similar harassment claims." The letter gave Warrick a "strictly established protocol"[4] to follow in the event "a new issue arises which is not similar or not connected to [her] previous claims." The letter did not provide any guidelines for determining whether future complaints were similar or connected to Warrick's previous claims.

Warrick filed the present lawsuit in July 2012. Warrick asserted that Motiva unlawfully discriminated against her on the basis of her race and its perception that she had a disability, as well as unlawfully retaliated against her for opposing Motiva's discriminatory practices, in violation of Chapter 21 of the Texas Labor Code.[5] Motiva filed a traditional and no-evidence motion for summary judgment. Motiva contended that it was entitled to judgment as a matter of law on Warrick's

___

[4] The protocol restricted Warrick to reporting new issues to a specifically designated employee in Shell's Equal Opportunity Department and provided the employee's telephone number.

[5] "Courts have referred to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act (TCHRA or CHRA); however, the Comission on Human Rights has been replaced with the Texas Workforce Commission civil rights division." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010). We refer to the chapter as "the TCHRA" or "the Act."

claims of disparate treatment on the basis of race and disability because she had not suffered an adverse employment action. Motiva contended it was entitled to judgment as a matter of law on Warrick's retaliation claims because her January 16 e-mail cannot be regarded as protected activity under the TCHRA, and she was not subject to an adverse employment action as a result.

In response, Warrick contended that she was subject to adverse employment action "when she was denied the same leave and pay package as her similarly situated white coworker." Warrick also contended that forcing her to undergo a psychiatric evaluation, take disability leave, and submit to restrictive conditions upon her return was an adverse employment action. Warrick contended she engaged in protected activity "when she complained to Defendant via email about occurrences which she believed to be discrimination against her."

The trial court granted Motiva's motion for summary judgment and entered a take nothing judgment for Warrick. The trial court denied and dismissed all of Warrick's claims. This appeal followed.

ANALYSIS

Warrick raises three issues on appeal. In her first two issues, Warrick contends the trial court erred in granting Motiva's hybrid traditional and no-evidence motion for summary judgment regarding her claims of disparate treatment on the basis of race and perceived disability. In her third issue, Warrick contends the trial court erred in granting Motiva's hybrid traditional and no-evidence motion regarding her retaliation claim. We consider the evidence as to each claim in turn.

## I. Standard of review

We review a trial court's grant of summary judgment de novo. *Lyda*

*Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 229 (Tex. App.—Houston [14th Dist.] 2013, pet. filed). In reviewing a summary judgment, "we take as true all evidence favorable to the non[-]movant and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *Brown v. Hearthwood II Owners Ass'n Inc.*, 201 S.W.3d 153, 159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

A defendant may prove entitlement to traditional summary judgment by conclusively negating at least one essential element of each of the plaintiff's theories of recovery. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997) (internal citation omitted). In a traditional motion for summary judgment, the movant defendant has the initial burden of "demonstrat[ing] that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law." *Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 229. If the movant does so, the burden then shifts to the non-movant plaintiff to produce evidence sufficient to raise a fact issue. *Id.*

"In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the non-movant bears the burden of proof at trial." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A defendant moving for a no-evidence summary judgment may prevail by alleging that there is no evidence of an essential element for each of the plaintiff's claims. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). To survive summary judgment, the non-movant plaintiff then has the burden to present more than a scintilla of evidence as to the challenged elements, i.e. evidence that would

enable reasonable and fair-minded people to differ in their conclusions. *Grant v. Joe Myers Toyota, Inc.*, 11 S.W.3d 419, 422 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

When the trial court does not specify the grounds on which it relied in granting summary judgment, we will affirm the summary judgment if any grounds presented in the motion are meritorious. *Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

## II. Warrick failed to provide more than a scintilla of evidence that she suffered an adverse employment action on the basis of her race or the perception that she has a disability.

The TCHRA prohibits employers from taking actions that adversely affect an employee, whether on the basis of race or the perception that the employee has a disability, or with the purpose of retaliating against the employee for opposing discriminatory practices. Tex. Labor Code Ann. §§ 21.002(6) 21.051, 21.055 (West 2006 & Supp. 2014). Often, direct evidence of discriminatory intent does not exist, and plaintiffs must rely on the burden-shifting mechanism articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973),[6] to obtain a presumption of discrimination by meeting the initial burden of establishing a prima facie case of discrimination. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012).

A plaintiff's prima facie case of unlawful employment discrimination consists of proof that (1) she was a member of a protected class; (2) she suffered an adverse employment action, and (3) non-protected class employees were not

---

[6] Because one of the purposes of the TCHRA is to execute the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments, we consult analogous federal statutes and cases interpreting them in our interpretation of the TCHRA. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

treated similarly.  *Flores v. City of Liberty*, 318 S.W.3d 551, 554 (Tex. App.—Beaumont 2010, no pet.); *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 574 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Although the ultimate burden of persuasion remains with the employee, once the employee has made a prima facie case, the *McDonnell–Douglas* mechanism shifts the burden of production to the employer to provide a legitimate, nondiscriminatory reason for the disparate treatment.  *Gonzalez v. Champion Technologies, Inc.*, 384 S.W.3d 462, 466 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Flores*, 318 S.W.3d at 554.

The Act "does not address every decision made by employers that arguably might have some tangential effect on employment decisions." *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.).  Because the need for prophylactic measures is greater in the context of claims of retaliation than claims of discriminatory conduct, *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), the TCHRA distinguishes between the two types of claims.  *See Navy*, 407 S.W.3d at 901 (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67).  A narrower range of employer conduct constitutes an "adverse employment action" in the context of a claim of disparate treatment on the basis of a prohibited characteristic.  *Id.*

With respect to a claim of disparate treatment, an employer commits an unlawful employment practice if the employer "limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee" on the basis of a prohibited characteristic such as race or the perception that the employee is disabled.  *See* Tex. Labor Code Ann. §§ 21.002(6), 21.051, 21.055; *see also City of Houston v. Proler*, 437 S.W.3d 529, 532–33 (Tex. 2014).  The prohibitions on discriminatory treatment address

11

"ultimate employment decisions," including those "involv[ing] hiring, granting leave, discharging, promoting, and compensation" and require the employee to show more than an action "which *might* jeopardize employment in the future." *Navy*, 407 S.W.3d at 899 (internal quotation marks omitted).

Here, Motiva challenged Warrick's ability to meet her initial burden of establishing a prima facie case of disparate treatment on the basis of either race or the perception that she had a disability. In its motion for no-evidence summary judgment, Motiva contended Warrick could not establish a genuine issue of material fact either that she was subjected to an adverse ultimate employment decision or that a similarly situated employee in a non-protected class received different treatment. We hold that Warrick failed to produce more than a scintilla of evidence that Motiva subjected her to an adverse employment action, and therefore do not consider whether similarly situated employees received disparate treatment.

Warrick contends that she produced evidence of an adverse employment action for her claim of discrimination based on a perceived disability because Motiva's request that she submit to psychological examinations "would well have dissuaded a reasonable worker from making or supporting a charge of discrimination." As discussed above, however, the prima facie case in the context of a claim of discriminatory conduct requires evidence of an adverse action that would amount to an "ultimate employment decision," such as those involving "hiring, granting leave, discharging, promoting, and compensation." *Navy*, 407 S.W.3d at 899 (internal quotation marks omitted). Warrick has not offered evidence that either the psychological assessments or her placement on paid disability leave during the pendency of the assessments have had any impact on those conditions of her employment.

With respect to race, Warrick contends that she was subject to adverse

employment actions "when she was denied the same leave and pay package as her similarly situated white coworker." Although "ultimate employment decisions" do encompass decisions regarding compensating employees and granting leave, *see id.*, even if we were to assume that Warrick and her white co-worker were equally qualified, Warrick has not shown that either her leave or her compensation were adversely affected. Warrick herself alleges that the other employee was not using his vacation hours, not that her white co-worker received a superior vacation package. Furthermore, the evidence establishes that Warrick and her co-worker were expected to work the same number of hours within the same time period, and that Warrick received a higher salary than the other employee for the required hours.

Warrick did allege that the employee worked fewer hours than the schedule required, but she acknowledges that following her request, the rules were enforced uniformly.[7] Warrick contends, however, that we should not consider Motiva's later uniform enforcement of the rules because Motiva "only acted upon Warrick's complaints in order to avoid the appearance of unequal treatment." This argument fails because there is no evidence in our record that Motiva had such an intent. *See Mission Consol. Indep. Sch. Dist.*, 373 S.W.3d at 634 (holding that Texas courts accept the "two alternative methods of proof in discriminatory treatment cases" of direct intent evidence and the *McDonnell–Douglas* presumption). Warrick is essentially asking us to relieve her of her burden to show the established

---

[7] Warrick also contends that Motiva "had previous knowledge of [the employee's] adjusted schedule," but she has not produced any evidence other than her own assertions that Motiva was aware that her white coworker took extended lunches or left work early prior to its investigation. *Cf. Winters*, 132 S.W.3d at 576 ("An employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief.") (internal quotation marks omitted). Similarly, there is no evidence in the record to support Warrick's assertion that had she not complained, the other employee "would still be working the adjusted hourly schedule without any assertion of breaking the rules."

13

circumstances from which we could presume that Motiva had a discriminatory intent, *see id.*, and instead infer Motiva's desire to treat her unequally from its actions to negate any unequal treatment. That is not a permissible method of proving her claim.

Because Warrick has not provided more than allegations that she suffered an adverse employment action amounting to an ultimate employment decision, we overrule Warrick's first two issues and affirm the summary judgment on Warrick's discrimination claims.

### III. Warrick failed to present more than a scintilla of evidence that her January 16 e-mail was protected activity under the TCHRA's provision against retaliation.

Turning to Warrick's retaliation claim, she alleged that she suffered an adverse employment action—consisting of being put on disability leave, forced to undergo psychological assessments, and given special conditions for her return to work—because of her January 16 e-mail. Because we hold the e-mail did not articulate opposition to any conduct made unlawful under the TCHRA, and therefore was not a protected activity, we do not reach the question whether a reasonable employee would consider the complained-of actions materially adverse.

The TCHRA prohibits employers from retaliating or discriminating against an employee who "(1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation proceeding or hearing." Tex. Lab. Code Ann. § 21.055. To establish a prima facie case of retaliation under the TCHRA, an employee must show that "(1) he participated in protected activity, (2) his employer took an adverse employment action against him, and (3) a causal connection existed between his protected activity and the adverse employment action." *Brewer v.*

*Coll. of the Mainland*, 441 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2014, no pet.). As with claims of disparate treatment, the burden then shifts to the employer to rebut the presumption of retaliation "by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 739 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

Regardless of whether the employee has already filed a formal complaint, "actionable retaliation exists when an employer makes an adverse employment decision against an employee who voices opposition to conduct made unlawful under the [T]CHRA." *City of Waco v. Lopez*, 259 S.W.3d 147, 152 (Tex. 2008). The prohibition against retaliation protects against a broader category of employer activity than the prohibitions against disparate treatment, extending to "actions that a reasonable employee would have found materially adverse." *Navy*, 407 S.W.3d at 901. A materially adverse employment action is one that is "likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *Id.* at 901–902 (internal quotation marks omitted) (holding a "negative peer evaluation would not deter a reasonable victim of discrimination from complaining about the discriminatory conduct").

Applying these principles to the evidence, we begin with the first element of a prima facie case: participation in protected activity. An employee complaining of discrimination may be engaged in protected activity. The employee must offer evidence that she had a reasonable belief that the employer's opposed practice was unlawful, and the employee must show more than a "vague charge of discrimination" to "invoke protection under the statute." *Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.). The employee must put the employer on notice that the employee is opposing practices

that the she believes constitute prohibited discrimination. *E.g.*, *Chandler v. CSC Applied Technologies, LLC*, 376 S.W.3d 802, 823–824 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (plaintiff did not engage in protected activity by complaining he was "'eligible' to go on [a] trip, but not specifically informing . . . management that he believed his race was the reason why he was not included"); *Martinez v. Wilson Cnty.*, No. 04-09-00233-CV, 2010 WL 114407, at *3 (Tex. App.—San Antonio 2010, no pet.) (mem. op.) ("A complaint of unfair treatment and harassment does not put the employer on notice that the complaint was based on . . . sexual discrimination.") (internal quotation marks omitted); *see also Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue."); *Harris–Childs v. Medco Health Solutions, Inc.*, 169 Fed. App'x. 913, 916 (5th Cir. 2006) (holding appellant produced no evidence that "when she made her complaints to management, [she] ever mentioned that she felt she was being treated unfairly due to her *race* or *sex*").

Here, Warrick has not alleged that Motiva retaliated against her for engaging in the protected activity of making complaints to her union or the EEOC. Instead, Warrick alleged that she "engaged in protected activity when she complained to Defendant via email about occurrences which she believed to be discrimination against her." Warrick acknowledges that Motiva's summary judgment motion challenged the absence of an explicit complaint of racial or disability discrimination in the e-mail, but contends that her interrogatory responses "clearly indicate that her intent in sending the email was to oppose discrimination and harassment."

16

The TCHRA proscribes retaliation against employees who voice opposition to discriminatory practices, however. *Cf. Lopez*, 259 S.W.3d at 152. An employer cannot retaliate against an employee for voicing opposition to discriminatory practices if the employee has not actually voiced such opposition. *Cf. Dias*, 214 S.W.3d at 679 (rejecting an "exten[sion] of the statute's scope to situations in which the employer only *perceives* the plaintiff has engaged in protected activity"). Therefore, the relevant inquiry is not Warrick's intentions in sending the e-mail, but whether her opposition to proscribed discriminatory practices was discernible in the e-mail itself. *E.g. Harris-Childs*, 169 F. App'x at 916 (holding plaintiff failed to demonstrate "that she put the employer on notice that her complaint was based on racial or sexual discrimination"). We conclude that it was not.

Aside from alleging that Poulter "had his investigators following the wrong person," Warrick's e-mail does not identify any manner in which her treatment differed from the other employee's. Although Warrick asserts on appeal that her e-mail referred to the other employee "being treated differently than her for years," the e-mail itself merely describes the other employee's "stealing time." The e-mail states that Warrick "wrote the EEOC about how the [other] employee works approximately 7 hours a day and gets paid for 9." Warrick's e-mail sufficiently accuses her co-worker of unethical conduct, but it does not compare his circumstances to Warrick's own. *Cf. Brewer*, 441 S.W.3d at 729 (holding employee must show "*his employer* took an adverse employment action against him" (emphasis added)). The paragraph at issue gives the impression that Warrick is concerned that "what this employee has [done] deserves . . . action" rather than being concerned about her own relative treatment. All of Warrick's complaints regarding her own treatment relate to Poulter's alleged serial bullying, not to her co-worker's "stealing time."

17

Moreover, Warrick's email does not allege that either her co-worker's treatment or the alleged bullying against her were based on a protected characteristic such as race or perceptions of disability. The email does not mention either her own race or the other employee's race, nor does it mention Warrick's eye condition. The e-mail also does not claim that any of Poulter's alleged actions against her, including having an investigator follow her, were based on Warrick's race or any perception that Warrick had a disability.

Nor does Warrick's assertion that she had exercised her "rights as an American citizen" convey any belief that she was being discriminated against on the basis of her race or a disability. At most, the e-mail shows that Warrick mentioned she was communicating with the EEOC about another employee who was not working his scheduled hours, not that Warrick was communicating opposition to practices made unlawful under the TCHRA. Although the record also shows that Warrick had filed complaints with the EEOC prior to sending the January 16 e-mail, Warrick does not identify an EEOC complaint in the e-mail that might otherwise put Motiva on notice that Warrick's e-mail was an attempt to voice opposition to conduct she reasonably believed was unlawful under the TCHRA, as opposed to what she reasonably believed was unethical employee conduct.

For these reasons, we hold that Warrick failed to produce more than a scintilla of evidence that writing the e-mail constituted protected activity by "voic[ing] opposition to conduct made unlawful under the [T]CHRA." *Lopez*, 259 S.W.3d at 152. We therefore overrule Warrick's third issue and affirm the summary judgment on her retaliation claim.

18

## CONCLUSION

Having overruled each of appellant's issues, we affirm the judgment of the trial court.


/s/    J. Brett Busby
        Justice


Panel consists of Justices Boyce, Busby, and Wise.