**Affirmed and Memorandum Opinion filed August 20, 2015.**



In the

# Fourteenth Court of Appeals

## NO. 14-14-00332-CV

### RAMIRO NAJERA, Appellant

### V.

### RECANA SOLUTIONS, LLC, Appellee

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 69057**

## M E M O R A N D U M   O P I N I O N

Ramiro Najera appeals from a take-nothing summary judgment rendered in his suit against Recana Solutions, LLC. Recana, a staffing company, placed two of its workers to provide manual labor to American Rice, Inc., at American Rice's plant. These workers were on the team that fumigated the packaged rice. One of them was Najera. The other was James Prodoehl, who reported to Najera. On June 4, 2012, close to the end of their shift, Prodoehl assaulted Najera with a hard

hat. Najera sustained injuries to his teeth and shoulder. Najera filed suit against Recana, alleging respondeat superior, negligence, and gross negligence. Najera claimed Recana was negligent in hiring and retaining Prodoehl because it did not perform a criminal background check, and also was negligent in supervising and training Prodoehl. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

American Rice, Inc. operates a rice mill at the port in Freeport, Texas. Recana Solutions, LLC, is a staffing company. Pursuant to a service agreement, Recana serves as the primary vendor for staffing laborers at the mill.

Ramiro Najera was employed by Recana and worked at the mill. Najera worked with several others on a fumigation team. The team's duties included cutting and stretching large plastic sheets over pallets of packaged rice, fumigating the rice, picking up garbage and dead pests, and sweeping. The team did its work after the night shift "had already left." Najera was in charge of the team and reported to Francisco Ayala.

James Prodoehl worked for Recana. Prodoehl was a member of the fumigation team and worked with Najera for about three months. Najera believed Prodoehl did a good job at work and did not remember any complaints about him.

On June 4, 2012, Ayala informed Najera that his team needed to stay late that day to remove plastic sheets from the pallets. Najera told his team, and some of them got upset. Prodoehl told Najera that he was not going to work. Najera responded that he would call Ayala and tell him. Prodoehl began hitting Najera with a hard hat. Najera suffered loose front teeth and an injured shoulder. Recana immediately terminated Prodoehl for fighting.

In his Recana employment application, Prodoehl indicated that he was not a

2

convicted felon. Prodoehl's criminal record includes misdemeanor convictions for possession of a controlled substance, DWI, and assault. Recana did not conduct a criminal background check of Prodoehl.

Najera filed suit against Recana and American Rice,[1] alleging negligence and respondeat superior, and gross negligence as to Recana. Specifically, as to negligence,[2] Najera alleged that Recana had a duty to hire, supervise, and retain competent and nonviolent employees; Recana breached that duty by failing to check Prodoehl's criminal history; and Recana's negligence proximately caused physical harm to Najera.

Recana filed a combined no-evidence and traditional motion for summary judgment. With regard to respondeat superior, Recana argued that there was no evidence that Prodoehl assaulted Najera in the course and scope of his employment. With regard to negligence, Recana argued that there was no evidence Recana owed Najera a duty to conduct a criminal background check on Prodoehl for the American Rice position, Recana breached any duty, and any breach was the proximate cause of Najera's injuries. To the extent Najera alleged that Recana negligently undertook the duty to conduct background checks based on the service agreement,[3] Recana argued there was no evidence of any of the elements of negligent undertaking. Recana contended there was no evidence that:

---

[1] Najera settled with American Rice, and the parties filed an agreed motion to dismiss American Rice with prejudice. Although the record does not contain the trial court's signed dismissal order, the court's order granting final summary judgment in favor of Recana states that it finally disposed of all parties and all claims and was appealable.

[2] Najera asserted his claims of negligence against Recana pursuant to section 406.033 of the Texas Labor Code, a statutory provision governing employee common law claims against employers not subscribed to workers' compensation. *See* Tex. Lab. Code Ann. § 406.033 (West, Westlaw through 2015 R. Sess.).

[3] Section 6.3 of the service agreement provided that Recana would be responsible for advertising, interviewing, reference screening, criminal background screening, drug testing, I-9 screening, and basic safety training.

3

(1) Recana undertook to conduct criminal background checks it knew or should have known were necessary for Najera's protection; (2) Recana failed to exercise reasonable care in its performance of such services; (3) Najera relied on Recana's performing background checks or Recana's performance increased Najera's risk of harm; and (4) any such negligence proximately caused Najera's injuries. *See Nall v. Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838–39 (Tex. 2000)). Recana also argued there was no evidence that Recana breached its duty to supervise or train Prodoehl or that any breach was the proximate cause of Najera's injuries. Further, Recana asserted there was no evidence that Recana's acts or omissions fulfilled the objective and subjective components of gross negligence.

Recana also argued various traditional grounds for summary judgment: as a matter of law, Prodoehl's assault on Najera was not within the scope of his employment; the evidence affirmatively proved Recana had no duty to perform a criminal background check, Recana did not undertake any duty to perform a criminal background check on Prodoehl and the service agreement did not require that Recana conduct any background check, Recana did not breach any duty, and no such breach proximately caused Najera's injuries; and the evidence affirmatively proved Recana did not breach any duty to supervise or train Prodoehl, and no such breach proximately caused Najera's injuries.

Recana attached Najera's deposition and an affidavit from Michael Cervantes, Recana's safety manager and a business records custodian, with exhibits. These exhibits consisted of the service agreement, a safety form where Prodoehl acknowledged Recana prohibited horseplay and fighting, and the notice of Prodoehl's termination for fighting.

Najera responded, and attached various documents, including his deposition,

4

the service agreement, Recana's incident report, Freeport Police Department records, arrest and criminal case search documents for Prodoehl, an affidavit from Billy Crowell,[4] various medical records, and Prodoehl's Recana employment records.

Recana filed a motion to exclude Najera's experts and an objection and motion to strike Najera's summary judgment evidence. The trial court held a hearing on the motions. The trial court granted Recana's motion to exclude as to Crowell and motion to strike as to Crowell's affidavit. The trial court granted Recana's motion for summary judgment without specifying the grounds. Najera timely appealed.

## II. ANALYSIS

### A. Standard of review

We review the trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). A no-evidence motion for summary judgment must be granted if: (1) the

---

[4] Najera had designated Crowell as a rebuttal expert witness on safety and OSHA standards.

moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof on at trial and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 898 (Tex. App.–Houston [14th Dist.] 2013, no pet.); *see* Tex. R. Civ. P. 166a(i). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). The evidence is insufficient if it is so weak as to do no more than raise a mere surmise or suspicion that the challenged fact exists. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009).

In a traditional motion for summary judgment, the movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. *See Centeq. Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). A defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

"When both parties bring forth summary judgment evidence, the ultimate issue is whether a fact issue exists." *Cohen v. Landry's Inc.*, 442 S.W.3d 818, 823–24 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013)). In reviewing either type

6

of summary judgment motion, we take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Navy*, 407 S.W.3d at 898.

## B. The trial court did not err in granting summary judgment to Recana.

In three issues, Najera contends that the trial court erred in granting Recana's motion for summary judgment. Najera complains that the trial court erred: (1) by determining there was no duty to perform a criminal background check, (2) by determining there was no duty to supervise Prodoehl, and (3) because there were questions of material fact.

### 1. Negligence

We first consider Najera's negligence claims.

Although an employer is not an insurer of its employees' safety at work, it has a duty to use ordinary care in providing a safe workplace. *Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex. App.—Dallas 2005, pet. denied). An employer owes a duty to its other employees and to the general public to ascertain the qualifications and competence of the employees it hires, especially when the employee is engaged in a job that requires skill or experience and that could be hazardous to the safety of others. *Wise v. Complete Staffing Servs., Inc.*, 56 S.W.3d 900, 902 (Tex. App.—Texarkana 2001, no pet.).[5] Therefore, an employer is liable if it hires, retains, or supervises an employee whom it either knows or should have known was not competent or fit for the job and whose incompetence

---

[5] Although the Supreme Court of Texas has not yet set out what duty an employer has in negligent hiring or supervision claims, it has indicated that to recover on these theories, a plaintiff must show more than just negligent hiring practices. *Davis-Lynch, Inc. v. Asgard Techs., LLC*, —S.W.3d—, No. 14-13-01112-CV, 2015 WL 3988232, at *7 & n.11 (Tex. App.—Houston [14th Dist.] June 30, 2015, no. pet. h.) (citing *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (per curiam)).

or unfitness creates an unreasonable risk of harm to others because of the employee's job-related duties. *See Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 100–01 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Wise*, 56 S.W.3d at 902; *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

Negligent hiring, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. *See Verinakis*, 987 S.W.2d at 97. While the employee need not be acting in the scope of his employment to impose liability on the employer, the theory of negligent hiring and supervision does require that a plaintiff's harm be the result of the employment. *Houser v. Smith*, 968 S.W.2d 542, 544 (Tex. App.—Austin 1998, no pet.). As with any negligence case, the plaintiff must prove the existence of a legal duty, a breach of that duty, and damages proximately caused as a result of the breach. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

Duty is the threshold inquiry and is a question of law for the court to decide based upon facts surrounding the occurrence in question. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). In determining whether to impose a duty on a particular defendant, courts weigh: (1) the risk involved; (2) foreseeability of the risk; (3) likelihood of injury; and (4) the social utility of the actor's conduct and the magnitude of the burden on the defendant. *See Greater Houston Transp.*, 801 S.W.2d at 525. Foreseeability of the risk is the foremost and dominant consideration. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). "In the absence of foreseeability, there is no duty." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 954 (Tex. 1996). Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligent act

8

created for others. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985).

### a. Negligent hiring and retention

With regard to Recana's hiring practices, the parties essentially disagree about whether Recana had a duty to perform a criminal background check of Prodoehl. Najera complains that the trial court erred in determining there was no duty owed to him.

Both parties cite *Wise v. Complete Staffing Services., Inc.* Wise, an employee of Mrs. Baird's Bakery, was attacked and severely injured by a temporary worker employed by a staffing company and placed at the bakery as an unskilled laborer. 56 S.W.3d at 901. Wise alleged that the staffing company was negligent and grossly negligent in employing the temporary worker because it did not sufficiently investigate his criminal background and that the staffing company had a "special relationship" with the temporary worker and failed to adequately supervise his activities and adequately check his credentials. *Id.* Wise also alleged that, because of its special relationship with the temporary worker, the staffing company had a duty to discover and warn Mrs. Baird's about the temporary worker's criminal background. *Id.* The staffing company moved for summary judgment, contending that under the facts alleged by Wise, it had no general duty to seek or obtain criminal records of its employees, no special circumstance existed that would impose any heightened level of duty on it, and there was no evidence that it assumed such a duty.[6] *Id.* at 901–02.

---

[6] The *Wise* court determined a fact issue existed as to the negligent performance of the criminal background check that the staffing company did undertake to perform. 56 S.W.3d at 904. Here, Najera's claim of negligence relates to failing to perform a criminal background check, not performing one negligently. In any event, like the *Wise* court, we separately consider any negligent undertaking claim brought by Najera.

The *Wise* court analyzed whether the temporary worker was placed in a situation that foreseeably created a risk of harm to others because of his employment duties. *Id.* at 903. The court noted that the case was unlike *Estate of Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.), in which an employer was found liable for negligently hiring someone as a security guard when he had a long criminal record, as it was foreseeable that a customer might be harmed (there, shot) by an armed employee performing a hazardous job. *Wise,* 56 S.W.3d at 903. The *Wise* court concluded that its facts were closer to *Guidry v. National Freight, Inc.,* 944 S.W.2d 807, 811–12 (Tex. App.—Austin 1997, no writ), in which a truck driver sexually assaulted a third party and the court held such "bad acts" to be unforeseeable. *Wise,* 56 S.W.3d at 903. The employer's duty in *Guidry* did not extend to investigating non-vehicular criminal backgrounds. *Wise,* 56 S.W.3d at 903. The *Wise* court explained that the result in *Guidry* was consistent with the general negligent hiring rule, which is not aimed at avoiding a general propensity for bad acts, but rather at protecting against workers who are unsafe or dangerous on the job—i.e., their incompetency must be somehow job-related. *Wise,* 56 S.W.3d at 903. The *Wise* court held that, similarly, the temporary worker did not injure Wise as a result of incompetence or unfitness for the job, but by an intervening criminal act, and the staffing company had no duty to check the criminal histories of its employees unless it was directly related to the duties of the job at hand. *Id.*

This court recently has applied the *Wise* court's analysis in *Davis-Lynch, Inc. v. Asgard Technologies, LLC,* —S.W.3d—, No. 14-13-01112-CV, 2015 WL 3988232, at *9 (Tex. App.—Houston [14th Dist.] June 30, 2015, no pet. h.). In *Davis-Lynch,* a staffing company placed an employee as a receptionist at Davis-Lynch, an oilfield manufacturing company. *Id.* at *1. The employee subsequently

was promoted and eventually became head of accounting. *Id.* at *1-2. Davis-Lynch ultimately discovered that while in the accounting department the employee had embezzled over $15 million and that her criminal history included a deferred adjudication for a misdemeanor theft and a conviction for misdemeanor theft. *Id.* at *2. Davis-Lynch brought various claims against the staffing company, including for negligent hiring of the employee. *Id.* at *2, 9. This court affirmed the summary judgment in favor of the staffing company as to the claim for negligent hiring, concluding that the company did not have a duty to perform a criminal background check when hiring and placing the receptionist at Davis-Lynch. *Id.* at *10, 14 ("The facts do not show that [staffing company] knew or should have known that, because of its acts of hiring and placing [employee] without performing a background check, the crime (or one like it) might occur.").

We conclude that Prodoehl's assault on Najera falls more in line with *Wise*, *Guidry*, and *Davis-Lynch* than with *Estate of Arrington*. Even when properly viewed in the light most favorable to Najera, the evidence shows Prodoehl's job as a laborer on the fumigation team did not require any special or unique skills or experience, and did not involve circumstances of heightened confrontation or particularly dangerous tools or weapons. Therefore, this is not a situation that foreseeably created a peculiar risk of harm to others by reason of the employment duties. *Compare Davis-Lynch*, —S.W.3d—, 2015 WL 3988232, at *10, *Wise*, 56 S.W.3d at 903, *and Guidry*, 944 S.W.2d at 811, *with Estate of Arrington*, 578 S.W.2d at 178; *see also Houser*, 968 S.W.2d at 545 (sexual assault and harm to customer were not foreseeable and transmission shop owner did not owe legal duty beyond that of providing competent transmission mechanic).

There is no evidence that Prodoehl assaulted Najera as a result of his incompetence or unfitness for the job. *See Wise*, 56 S.W.3d at 903. There is also

11

no evidence that Prodoehl proved to be incompetent in his job duties such that Recana was negligent in retaining him as a laborer after he was hired. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (certified peace officer was fit for security guard position and no conflicting evidence of unfitness prior to incident). To the contrary, Prodoehl had previously performed his job duties well and there were no complaints about his performance.[7]

Beyond that of employer and employee, these circumstances do not reflect any special relationships that would enlarge Recana's duties with regard to investigating Prodoehl's criminal background. *See Wise*, 56 S.W.3d at 904–05. There is no evidence that Prodoehl would have potential contact with particularly vulnerable individuals.[8]

In addition to the lack of foreseeability, performing criminal background checks on every unskilled laborer Recana places would likely impose a significant administrative burden and costs. *See Houser*, 969 S.W.2d at 546; *Guidry*, 944 S.W.2d at 811. Public policy and societal interests also affect the decision to impose a legal duty. *See Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 950 (Tex. App.—Amarillo 1994, *aff'd*, 907 S.W.2d 472 (Tex. 1995). For example, imposing such a duty under these circumstances could limit the ability of former offenders to attain

---

[7] Further weighing against the foreseeability of the risk, the record indicates that Recana had previously hired and rehired Prodoehl for temporary labor positions at American Rice, apparently without incident.

[8] *See, e.g., Scott Fetzer Co. v. Read*, 945 S.W.2d 854, 868 (Tex. App.—Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex. 1998) (door-to-door vacuum salesman sexually assaulted homeowner); *Porter v. Nemir*, 900 S.W.2d 376, 386 (Tex. App.—Austin 1995, no writ) (drug counselor sexually assaulted psychologically fragile client); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 868 S.W.2d 942, 950–51 (Tex. App.—Amarillo 1994) (club volunteer performing community service molested minor boys), *aff'd*, 907 S.W.2d 472 (Tex. 1995); *Deerings W. Nursing Ctr. v. Scott*, 787 S.W.2d 494, 496 (Tex. App.—El Paso 1990, writ denied) (unlicensed nurse assaulted an elderly visitor to nursing home).

gainful and productive employment. *See Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 913 (Minn. 1983), *cited in Mindi M. v. Flagship Hotel, Ltd.*, 439 S.W.3d 551, 561 (Tex. App.—Houston [14th Dist.] 2014, pet. granted, judgm't vacated, remanded by agr.).

We disagree with Najera that *Wise* is materially distinguishable. Najera contends that here the location involved a secure zone at the port where laborers were subject to criminal background screening. However, such evidence does not raise a fact issue that performing a criminal background check was directly related to the duties of the fumigation job at hand. All the evidence raises is that a Transportation Worker Identification Card (TWIC) badge was required to access the port and that TWIC enrollment could be more problematic for serious felons, but even they could apply for a waiver.[9] Najera also contends that the evidence shows Prodoehl used "dangerous instrumentalities." That the job involved handling fumigants does not constitute evidence that a risk of assault not involving fumigants was foreseeable.

Here, the facts do not show that Recana knew or should have known that, because of its acts in hiring, placing, and retaining Prodoehl as a laborer without performing a criminal background check, the assault might occur. *See Davis-Lynch*, —S.W.3d—, 2015 WL 3988232, at *10. We conclude that, considering the facts surrounding Recana's hiring and placement of Prodoehl, Recana had no general duty to perform a criminal background check. *See id.*

Next, we consider whether Recana nevertheless could be subject to liability for negligent hiring or retention based on any assumed duty to undertake a criminal background check of Prodoehl. Najera further argues that, within the service agreement, Recana agreed to undertake criminal background screening and drug

---

[9] At the time of the incident, Prodoehl held an unexpired TWIC access card.

13

testing[10] for American Rice. Construing Najera's negligence claim as encompassing negligent undertaking, and even assuming without deciding for purposes of our analysis that Recana agreed to perform criminal background checks for American Rice in the service agreement for Najera's protection, giving rise to an undertaking duty, Recana moved for no-evidence summary judgment with regard to all the elements of negligent undertaking, including the essential element of whether Najera relied on Recana's performance or Recana's performance increased Najera's risk of harm. *See Torrington*, 46 S.W.3d at 838–39 & n.7.

Najera did not argue in his summary judgment response and does not argue on appeal that Najera relied on Recana's performance or that Recana's performance increased Najera's risk of harm. Nor does the summary judgment record reveal any evidence of reliance or increased harm. Therefore, Najera did not meet his burden to raise a fact issue as to reliance or increased harm, and the trial court correctly granted Recana's no-evidence summary judgment as to Najera's negligent undertaking claim. *See* Tex. R. Civ. P. 166a(i); *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432, 436–37 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Under these circumstances, we conclude the trial court properly granted summary judgment as to Najera's claim for negligent hiring and retention, including any negligent undertaking claim.

We overrule Najera's first issue.

---

[10] The summary judgment evidence reveals no correlation between any use of drugs and the incident. *Cf. Morris v. JTM Materials*, 78 S.W.3d 28, 51–52 (Tex. App.—Fort Worth 2002, no pet.) (truck driver involved in accident while intoxicated).

### b. Negligent supervision and training

In his second issue, Najera argues that the trial court erred in determining there was no duty to supervise Prodoehl. However, with regard to Najera's claim of negligent supervision and training, we note that Recana's position on summary judgment was not that it did not owe a general duty to supervise or train Prodoehl, but rather there was no evidence that it breached its duty or that any such breach was the proximate cause of Najera's injuries.

To establish a claim for negligent supervision and training, a plaintiff must show that the employer owed a legal duty to supervise and train its employees, the employer breached that duty, and that breach proximately caused his injuries.[11] *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.). The breach component requires proof that a reasonably prudent employer would have provided supervision or training beyond that which was given. *See Dangerfield*, 264 S.W.3d at 912–13; *see also Patino*, 158 S.W.3d at 661 (concluding plaintiff failed to meet burden as to breach on no-evidence summary judgment on negligent training and supervision).

Najera essentially argues that Recana breached its duty to supervise because Ayala was not on site at the time of the assault, but rather was in communication with Najera by cell phone. However, according to Najera, his supervisor Ayala worked for American Rice, not Recana. Najera also contends that Recana was required to provide an "on-site manage/coordinator" under the service agreement and did not do so. Even assuming that to be the case, Najera provided no evidence

---

[11] The components of proximate cause are cause-in-fact and foreseeability. *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Doe*, 907 S.W.2d at 477).

15

regarding what any supervisor could or should have done to prevent or stop the assault. Nor did Najera provide any evidence regarding what training a reasonably prudent employer could or should have provided to prevent or stop the assault. *See Knight*, 167 S.W.3d at 585 (no breach where no evidence that nightclub manager if present could have intervened to stop assault); *see also Patino*, 158 S.W.3d at 661 (no breach where plaintiff employee "presented no evidence showing that training and supervision beyond that given by [tire company employer] would be necessary or proper by a reasonably prudent employer"); *Dangerfield*, 264 S.W.3d at 913 (no breach where no evidence sporting goods store should have provided more training or supervision beyond that which was given regarding shoplifting incidents).[12]

Najera's summary judgment proof fails to raise a genuine issue of material facts as to whether Recana breached its legal duty to supervise or train Prodoehl. Therefore, we conclude that the trial court properly granted summary judgment on his negligent supervision and training claim because Najera failed to raise a material fact issue as to breach. *See Knight*, 167 S.W.3d at 584–85.

We overrule Najera's second issue.

### c. Crowell's affidavit

In his third issue, Najera asserts that the trial court erred because questions of material fact existed on his negligence claims. His arguments substantially overlap with his previous issues.

In addition, Najera attempts to create fact issues based on Crowell's testimony. Recana moved to strike Crowell's affidavit as summary judgment

---

[12] *See also Watkins v. Basurto*, No. 14-10-00299-CV, 2011 WL 1414135, at *7 (Tex. App.—Houston [14th Dist.] Apr. 14, 2011, no pet.) (mem. op.) (reversing and rendering summary judgment as to negligent supervision based on causation where patron "presented no evidence about what training the [bar] bouncer[]s should have received").

16

evidence. The trial court granted this motion without specifying the grounds for striking Crowell's affidavit.[13] Najera contends that the trial court abused its discretion in striking Crowell's affidavit.

We conclude that Najera has waived this subissue because he has not challenged on appeal all possible grounds for the trial court's ruling. *See Gulley v. Davis*, 321 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.). The entirety of Najera's contentions on this subissue consists of the following:

> Mr. Najer[a] provided the affidavit of an expert with 25 years['] safety experience. The trial [c]ourt struck that affidavit based on a challenge to his qualifications. The decision of a trial court to consider evidence presented by a non-movant is reviewed for an abuse of discretion. *BNSF Ry Co. v. Phillips*, [434 S.W.3d 675, 699] (Tex. App.—[Fort] Worth 2014, pet[.] filed). The qualifications of the expert need not be in the exact field, so long as the expert has sufficient expertise relating to the subject matter.

> Mr. Crowell has 25 years['] experience is employee safety, and OSHA regulation of the workplace. He spent several years actually reviewing backgrounds to determine suitability. He opined that a propensity to drug abuse, as shown in Mr. Prodoehl's criminal history, would make him unsuitable for employment that required manual labor and the use of dangerous chemicals (fumigants). (CR 954–956).

> Although qualified, relevant, and reasonably based on the documents provided by Recana, the Court struck his affidavit. (CR 1305). This is an abuse of discretion because it is in derogation of the prior controlling case law that would allow his testimony. In essence, the Court discredited his testimony, which is not the role of the trial court during a motion for summary judgment. Credibility questions are left for the jury.

Najera's brief fails to address the substance of Recana's multiple, specific

---

[13] The trial court also excluded Crowell as an expert.

objections—not just lack of qualifications—to virtually every paragraph of Crowell's affidavit. Najera cites to the entirety of Crowell's affidavit and simply concludes that the trial court should not have struck it because of "prior controlling case law." By failing to attack all possible grounds for the trial court's ruling, Najera has waived his challenge on appeal.

Accordingly, we overrule Najera's third issue.

### 2. Najera's additional claims

Recana gave fair notice to Najera in its no-evidence motion that it also was challenging elements of negligence liability on a theory of respondeat superior. Recana argued there was no evidence that Prodoehl was acting within the course and scope of his authority when he assaulted Najera—there was no evidence: (1) Recana gave Prodoehl the authority to assault Najera, (2) such assault was in furtherance of Recana's business, and (3) such assault was for Prodoehl's job. *See Knight*, 167 S.W.3d at 583. While the nonmovant is not required to marshal his evidence, in his summary judgment response he must point out evidence that raises a fact issue on the challenged elements. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). We conclude that the trial court properly granted no-evidence summary judgment on respondeat superior because Najera made no attempt in his response to point out any evidence raising a fact issue as to that claim. *See Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 195, 200 (Tex. App.—Houston [14th Dist.] 2011, no pet.). "The evidence presented cannot support an argument that has not been made, and the trial court is not required, sua sponte, to assume the role of [Najera's] advocate and supply his arguments for him." *Burns v. Canales*, No. 14-04-11786-CV, 2006 WL 461518, at *4 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, pet. struck) (mem. op.).

On appeal, Najera does not argue that he raised a fact issue as to the challenged elements of respondeat superior, but instead merely asserts that Recana did not provide an on-site manager as required by the service agreement. Even assuming this to be the case, the lack of any on-site manager does not raise a fact issue as to the course-and-scope element of respondeat superior. Moreover, in his brief Najera does not challenge the summary judgment as to gross negligence and therefore has abandoned this claim on appeal. *See Duerr v. Brown*, 262 S.W.3d 63, 69 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

### III.   CONCLUSION

Having resolved all of Najera's issues against him, we affirm the trial court's final summary judgment.


/s/    Marc W. Brown
Justice



Panel consists of Justices Jamison, Busby, and Brown.